617 F.2d 18
 1980-1 Trade Cases 63,207
 MIRACLE MILE ASSOCIATES, Wilmorite, Inc., Ray Hylan, and
James P. Wilmot, Plaintiffs-Appellants,
v.
CITY OF ROCHESTER, New York, a Municipal Corporation, South
Town Plaza, Inc., Elisha Freedman, John Stainton, Louis N.
Kash, Francis D. R. Coleman, David Vasile, Thomas P. Ryan,
Jr., and Tanya Yudelson, Defendants-Appellees.
 No. 347, Docket 79-7442.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 12, 1979.
Decided Feb. 25, 1980.
 
 Arnold M. Lerman, Washington, D.C. (Wilmer, Cutler & Pickering, Washington, D.C., Ronald J. Greene, Stephen P. Doyle, Washington, D.C., Harris, Beach, Wilcox, Rubin & Levey, Rochester, N.Y., J. Montieth Estes, Rochester, N.Y., of counsel), for plaintiffs-appellants.
 Kenneth A. Payment, Rochester, N.Y. (Harter, Secrest & Emery, Rochester, N.Y., A. Paul Britton, Jr., Wegman, Mayberry, Burgess & Feldstein, Rochester, N.Y., John J. Villeneuve, Rochester, N.Y., of counsel), for defendants-appellees.
 Before MULLIGAN, OAKES and GURFEIN,* Circuit Judges.
 MULLIGAN, Circuit Judge:
 
 
 1
 The plaintiffs in this action are the lessees and developers of a proposed regional shopping center in the town of Henrietta, a suburb of Rochester, New York. The defendants include the City of Rochester and several city officials (City defendants), and a commercial competitor which operates the largest shopping center in Henrietta. A complaint seeking approximately $49 million in damages was filed in the United States District Court for the Western District of New York on September 18, 1978, and alleged violations of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2), the New York Donnelley Act (Gen.Bus.L. § 340 (McKinney 1968 & Supp. 1979-1980)), and the New York common law of unfair competition. In a decision and order dated May 18, 1979, Judge Harold P. Burke granted defendants' motion for summary judgment and dismissed the complaint in its entirety.[1] Judge Burke also found that the action was frivolous and brought in bad faith to harass the City defendants. He therefore awarded the City defendants their costs including attorneys' fees, the exact amount to be fixed at a later date. This appeal followed.
 
 
 2
 The City defendants have further moved before this court pursuant to 28 U.S.C. § 1912 and Federal Rule of Appellate Procedure 38 for double costs and attorneys' fees on the ground that this appeal is frivolous. We affirm the order below dismissing the complaint, reverse that order insofar as it authorizes the award of counsel fees to the City defendants, and deny the motion for double costs and attorneys' fees for this appeal.
 
 
 3
 * The Sherman Act violations are based on the theory that the defendants have engaged in a conspiracy to restrain trade and to monopolize trade and commerce by entering into a series of baseless administrative proceedings in order to delay and hinder the construction and operation of the plaintiffs' shopping center. Plaintiffs claimed that these activities resulted in increased costs and the loss of profits of some $14,200,000. (This amount trebled, plus punitive damages, results in the $49,200,000 total claim).
 
 
 4
 Judge Burke dismissed the complaint, finding that the City defendants' actions were immunized on two grounds: 1) the so-called Noerr-Pennington doctrine,[2] which provides broad antitrust immunity for defendants who have invoked administrative and judicial processes irrespective of anti-competitive intent, and 2) Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), as broadened by Lafayette v. Louisiana Power and Light Co., 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978), which cases exempt "state action" from the antitrust laws. We need not reach the second point since we are persuaded that the dismissal of this complaint is clearly within the Noerr-Pennington rationale.
 
 
 5
 The plaintiffs James P. Wilmot and Wilmorite, Inc., represented by the same New York counsel, are no strangers to the legal principles which are applicable here. They brought a similar action in the Northern District of New York against commercial competitors who had challenged certain zoning ordinances through the institution of judicial and administrative proceedings in an attempt to block the construction of other shopping malls. Plaintiffs alleged that defendants' actions violated Sections 1 and 2 of the Sherman Act and New York law. Judge Port dismissed the complaint in a comprehensive opinion in which he held that defendants' conduct was protected under Noerr-Pennington. Wilmorite, Inc. v. Eagan Real Estate Inc., 454 F.Supp. 1124 (D.C.1977) (Wilmorite I ). This court affirmed on Judge Port's opinion, 578 F.2d 1372 (2d Cir.), cert. denied, 439 U.S. 983, 99 S.Ct. 573, 58 L.Ed.2d 655 (1978).
 
 
 6
 In gist the plaintiffs here complain that the City, as the owner of commercial property in Rochester, was a competitor of the proposed shopping center in Henrietta, and in an effort to delay and impede its progress petitioned New York's Department of Environmental Conservation (DEC) to apply the State Environmental Quality Review Act (SEQR) to the project; petitioned the DEC for a declaratory ruling that the project was subject to the Freshwater Wetlands Act of 1975; requested the U.S. Army Corps of Engineers to determine that a Section 404 Permit (33 U.S.C. § 1344) relating to the filling of wetlands and flood control would be required; and requested the U.S. Army Corps of Engineers and the DEC to force the plaintiffs to obtain a Section 401 Water Certification Permit under the Federal Water Pollution Control Act of 1972 (33 U.S.C. § 1341).[3] Plaintiffs maintain that these proceedings were motivated by anticompetitive intent and were within the so-called "sham" exception to the Noerr-Pennington doctrine.[4]
 
 
 7
 Under Noerr, mere solicitation of governmental action through legislative processes, even though the sole purpose of the defendants is to restrain competition, is an activity which is fully protected by the First Amendment and is immune from Sherman Act liability, 365 U.S. at 138, 145, 81 S.Ct. at 530, 533. The principles of Noerr were extended to proceedings before administrative agencies and the courts in California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510, 92 S.Ct. 609, 612, 30 L.Ed.2d 642 (1972). "The right of access to the courts is indeed but one aspect of the right of petition." That case makes clear, however, that Sherman Act immunity is sacrificed if the defendants utilize administrative or judicial proceedings so as to deny the plaintiffs " 'free and unlimited access' to those tribunals." 404 U.S. at 511, 92 S.Ct. at 612. As Judge Port noted in Wilmorite I, "access-barring is the cornerstone to the sham exception." 454 F.Supp. at 1134-35.
 
 
 8
 Appellants make no claim of access-barring except in the case of the City's commencement of the SEQR proceedings, which they allege blocked the issuance of any remaining permits or authorizations until the environmental impact statement had been filed and accepted by the agency. However, the appellants have conceded that the SEQR statute did apply to this project. Herein lies the principal weakness of their case. While the City of Rochester is cast in the complaint as a prospective competitor, allegedly because of its ownership of urban real estate, it is undeniable that the City has a legitimate interest in the economic welfare of the inner-city which it found threatened by the project. In fact, when the United States Postal Service proposed a facility in Henrietta, which would have had an adverse effect upon employment opportunities in the City of Rochester, this court noted the validity of the City's concern. City of Rochester v. United States Postal Service, 541 F.2d 967, 972-75 (2d Cir. 1976).
 
 
 9
 The sham exception cases relied upon by the appellants involved action by horizontal competitors (Trucking Unlimited, supra ), or monopolists (Otter Tail Power Co. v. United States, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973)) where the only motivation for resort to adjudicatory processes was the restraint or elimination of competition. In Wilmorite I for example, the present appellants were frustrated by overt competitors. Here the City defendants, who in fact initiated the proceedings complained of, had a legitimate municipal interest in preserving the City from the adverse economic impact created by the suburban project.
 
 
 10
 Appellants' argument that some of these proceedings could only delay and not ultimately defeat the construction of the shopping mall do not render those efforts frivolous. There is no question of the City's antipathy to the project, but that certainly does not eradicate the First Amendment protections which underlie the Noerr-Pennington doctrine.
 
 
 11
 Finally, we conclude that appellants here have had ample opportunity for discovery, and their conclusory allegations of "sham" in the complaint do not suffice to preclude summary relief. SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978).
 
 II
 
 12
 While we believe that the legal principles set forth in Wilmorite I clearly govern the outcome of this case, and while we recognize that this case is considerably weaker than Wilmorite I in view of the City's legitimate interest in economic urban welfare, we cannot accept the proposition that this action was brought in bad faith, and therefore cannot justify an award of attorneys' fees to the City as costs.[5] The mere fact that an action is without merit does not amount to bad faith. Runyan v. McCrary, 427 U.S. 160, 183-84, 96 S.Ct. 2586, 2601, 49 L.Ed.2d 415 (1976).
 
 
 13
 Suffice it to say that although some of the plaintiffs here were unsuccessful in a similar action and were represented by the same counsel, this action involves a different project and different proceedings. The fact that this court considers the principles of Wilmorite I applicable here to a factually distinguishable albeit weaker claim should not preclude litigation.
 
 
 14
 By the same token we cannot characterize this appeal as one taken in bad faith. We therefore affirm the dismissal of the complaint but reverse the order below permitting the City defendants counsel fees. We further deny appellees' motion for double costs. As the prevailing parties, the defendants and appellees are entitled only to those costs normally allowable.
 
 
 
 *
 Judge Gurfein heard the argument on December 12, 1979, and indicated his agreement with this disposition of the case at a voting conference prior to his death on December 16, 1979
 
 
 [1]
 Once Judge Burke determined that the defendants were entitled to summary judgment on the Sherman Act claims, he properly dismissed the entire complaint, since there was no pendent jurisdiction over the state claims
 
 
 [2]
 Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); United Mine Workers v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965)
 
 
 [3]
 The first proceeding was successful for the City as the DEC decided to apply the SEQR statute to plaintiffs' project. In the State Wetlands Proceeding, the City prevailed before the DEC. However, that ruling was subsequently vacated by the New York Supreme Court, and the Appellate Division for the Fourth Department affirmed. Miracle Mile Associates et al. v. Department of Environmental Conservation of the State of New York et al., App.Div., 423 N.Y.S.2d 732 (1979). Finally, both the federal and state agencies determined that the section 404 and section 401 permits would be required
 
 
 [4]
 The appellants also depend upon several informal requests made by the City to various agencies after this action was commenced. While they do demonstrate a resolve on the part of the City to delay the project and were by plaintiffs' own account unsuccessful for the City, the plaintiffs were not required to respond to these requests at the time and were not even aware that they had been made until they were disclosed through Freedom of Information Act requests
 
 
 [5]
 We need not and do not in this case accept the position of the Third Circuit in Byram Concretanks, Inc. v. Warren Concrete Products Co., 374 F.2d 649, 651 (3rd Cir. 1967) that absent specific legislative authorization attorneys' fees may not be awarded to defendants in private antitrust actions