ingly, the debtors in this case may not avoid Thorp's lien on their household goods.

We therefore reverse the judgment of the Bankruptcy Court and remand for further proceedings.

John C. SHIMMAN, Plaintiff-Appellee,

v.

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 18, Defendant-Appellant.

No. 82–3370.

United States Court of Appeals, Sixth Circuit.

Argued April 9, 1984.

Decided Oct. 1, 1984.

William Fadel (argued), Wuliger, Fadel & Beyer, Richard H. Verheij, Cleveland, Ohio, for defendant-appellant.

Cary Rodman Cooper, Cooper, Straub, Walinski & Cramer, Thomas J. Tucker (argued), Stephen M. Dane, Toledo, Ohio, for plaintiff-appellee.

Before LIVELY, Chief Judge and EDWARDS, ENGEL, KEITH, ¡ MERRITT, KENNEDY, MARTIN, CONTIE, KRU-

PANSKY and WELLFORD, Circuit Judges.*.

CORNELIA G. KENNEDY, Circuit Judge.

This appeal presents the question of whether Shimman could be awarded his attorney fees incurred during an earlier appeal in this case. We hold that there was no basis for the award and reverse.

## I. Introduction

In 1973 John C. Shimman brought suit against the International Union of Operating Engineers, Local 18 ("Local 18"); the International Union of Operating Engineers, AFL–CIO; John Frank, an officer of Local 18; and Terry and James Grothaus, members of Local 18. The complaint alleged violations of § 101(a) of the Labor-Management Reporting Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411(a); 42 U.S.C. §§ 1985 and 1986; and Ohio common law of assault and battery.

A bench trial was held in the District Court, bifurcated between issues of liability and damages. The essential facts developed at trial were that Terry and James Grothaus, at Frank's direction, assaulted Shimman at a district union meeting pursuant to a plan to intimidate and suppress the dissident movement in the union. Shimman was a dissident union member opposed to the union leadership.[1] The District Court found all defendants liable on the LMRDA and Ohio common law counts, and dismissed the counts under 42 U.S.C. §§ 1985 and 1986 as to all defendants. The District Court then awarded Shimman compensatory damages, attorney fees, and substantial punitive damages against all defendants. On appeal, a panel of this Court reversed the judgment against the International Union and reduced the amount of punitive damages assessed against the oth-

er defendants, but otherwise affirmed the District Court.[2]

Shimman then applied to the District Court for additional attorney fees for work done on the appeal. The defendants contested the District Court's authority to award attorney fees for the appeal, but did not question the amount sought. The District Court awarded Shimman $56,178.00 in attorney fees for the appeal, holding that such an award was authorized because of defendants' bad faith and malicious conduct. Defendant Local 18 appealed the award, which was affirmed by a divided panel of this Court. *Shimman v. International Union of Operating Engineers, Local 18*, 719 F.2d 879 (6th Cir.1983). On December 5, 1983 this Court vacated the panel's opinion and granted rehearing en banc.

Shimman contends that the District Court's award of attorney fees incurred during the earlier appeal may be justified under any of four bases: (1) the "bad faith" exception to the American Rule that attorney fees are generally not allowed; (2) the "common benefit" exception to the American Rule; (3) the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988; and (4) Ohio common law, which allows attorney fees in assault and battery cases. We examine each of these rationales in turn to see if they support the District Court's award.

## II. Bad Faith

■ The District Court held that it had authority to award attorney fees incurred at trial because it found that its "findings and conclusions upon the liability issue make abundantly clear that all of the defendants here acted in bad faith, vexatiously, maliciously, wantonly, wilfully, and entirely for oppressive reasons. They could not have innocently misunderstood that the LMRDA prohibited them from doing what

---

* Nathaniel R. Jones, Circuit Judge, took no part in the consideration or decision of this case.

1. The facts underlying this litigation are more fully described at *Shimman v. Frank*, 625 F.2d 80, 83–88 (6th Cir.1980).

2. This appeal was reported as *Shimman v. Frank*, 625 F.2d 80 (6th Cir.1980). The Court did not find it necessary to reach the cross-appeal regarding liability under 42 U.S.C. §§ 1985 and 1986. *See Shimman v. Frank*, 625 F.2d at 86 n. 10.

they did." After the 1980 appeal, the District Court then held that the same findings of malice and bad faith supported an award of attorney fees for the appeal. The District Court thus did not reach the three other grounds proposed by Shimman. This Court must therefore decide whether an award of appellate attorney fees is allowable where the defendants' acts giving rise to the underlying LMRDA cause of action were malicious and in bad faith.[3]

■ It has long been the general rule in the United States that a prevailing party may not ordinarily recover attorneys fees in the absence of a statute or enforceable contract providing for a fee award. This "American Rule" regarding attorney fees was adopted by the Supreme Court in *Arcambel v. Wiseman*, 3 U.S. (3 Dall.) 306, 1 L.Ed. 613 (1796). The American Rule applies to a claim for compensatory damages expressly created by a federal statute. *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). The American Rule's failure to fully compensate an injured party is justified by the rationale that "since litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967). The general American Rule has been reaffirmed numerous times by the Supreme Court. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Summit Valley Industries v. Lo-*

*cal 112, United Brotherhood of Carpenters*, 456 U.S. 717, 102 S.Ct. 2112, 72 L.Ed.2d 511 (1982); *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

■ The "bad faith" exception to the American Rule allows attorney fees in certain exceptional cases where the opposing party has acted in bad faith. The earliest Supreme Court case cited for this exception is *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). *Vaughan* was an admiralty suit by a seaman against shipowners for damages for failure to pay maintenance and cure while the seaman was recovering from an illness contracted aboard ship. Under admiralty law, the shipowners had a duty to provide the seaman with maintenance and cure while convalescing, and if they failed to provide maintenance and cure the shipowners were liable for consequential damages arising from their failure to pay. The Supreme Court allowed the seaman attorney fees incurred in his suit to recover maintenance as an item of damages for the shipowners' failure to pay maintenance. The Court reasoned that the shipowners:

> were callous in their attitude, making no investigation of [the seaman's] claim and by their silence neither admitting nor denying it. As a result of that recalcitrance, [the seaman] was forced to hire a lawyer and go to court to get what was plainly owed him under laws that are centuries old. The default was willful and persistent.

369 U.S. at 530–31, 82 S.Ct. at 999–1000. In the first Supreme Court case citing *Vaughan* as establishing an exception to the American Rule, *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714,

---

**3.** Shimman suggests that, because in the 1980 appeal a panel of this Court upheld an award for fees incurred at trial based in part on the same bad faith relied upon here, the law of the case doctrine precludes this Court from considering whether the bad faith exception applies to the type of bad faith found in the present case; leaving only the question of "whether the bad faith exception permits attorney fees to be awarded for appeals as well as for trial work." Supplemental Brief of Appellee at 15. The law

of the case doctrine, however, does .ot impair the power of an en banc court to overrule any panel decision. *See Van Gemert v. Boeing Co.*, 590 F.2d 433, 436–37 n. 9 (2d Cir.1978) (en banc), *aff'd on other grounds*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980); *In Re Central R. Co.*, 485 F.2d 208, 210–11 (3d Cir.1973) (en banc), *cert. denied*, 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974). For further discussion of the 1980 panel opinion, see note 11 *infra*.

718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967), the Court indicated that *Vaughan* was limited to calculating compensatory damages in admiralty cases. One year after *Fleischmann* and six years after *Vaughan*, however, the Supreme Court noted that "it has long been held that a federal court may award counsel fees to a successful plaintiff where a defense has been maintained 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402 n. 4, 88 S.Ct. 964, 966 n. 4, 19 L.Ed.2d 1263 (1968) (quoting 6 Moore's Federal Practice 1352 (1966 ed.)). In more recent cases, the Supreme Court has nonetheless cited *Vaughan* as the precursor of the broader principle espoused in *Newman*. *See Summit Valley Industries v. Local 112, United Brotherhood of Carpenters*, 456 U.S. 717, 721, 102 S.Ct. 2112, 2114, 72 L.Ed.2d 511 (1982); *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975); *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974); *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973).

Although the bad faith exception is firmly established in Supreme Court precedent, its limits are not precisely defined. In the present case, the only bad faith found to exist was that inherent in the acts giving rise to the substantive claim. We are therefore faced with the question of whether the bad faith exception covers this type of bad faith.

The bad faith considered by courts construing this exception generally falls within one of three categories: (1) bad faith occurring during the course of the litigation; (2) bad faith in bringing an action or in causing an action to be brought; and (3) bad faith in the acts giving rise to the substantive claim.[4] Bad faith in the conduct of the litigation, resulting in a fee award as a sanction for abuse of the judicial process, is the most familiar type of bad faith under which fees are awarded.[5] Courts have also consistently recognized attorney fees as awardable where a meritless claim or defense is maintained in bad faith.[6] Care must be taken to distinguish a defendant's bad faith in necessitating that an action be filed or in maintaining a defense from a defendant's bad faith in the acts giving rise to the claim. This distinction may be seen in the decision in *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), which first established the bad faith exception. In *Vaughan* the defendants

---

**4.** In *Straub v. Vaisman & Co.*, 540 F.2d 591, 600 (3d Cir.1976), the Third Circuit used essentially these three categories to classify the cases, although it denominated the second category "vexatious conduct which occurred before litigation actually commenced." This language seems inappropriate, since conduct in both the second and third categories would normally occur before litigation commences.

**5.** Cases considering application of the bad faith exception to this type of bad faith include *Caspe v. Aaacon Auto Transport*, 658 F.2d 613, 617–18 (8th Cir.1981); *Huddleston v. Herman & MacLean*, 640 F.2d 534, 559–60 (5th Cir.1981); *Browning Debenture Holders' Committee v. Dasa Corp.*, 560 F.2d 1078, 1087–89 (2d Cir.1977); *Adams v. Carlson*, 521 F.2d 168, 170 (7th Cir. 1975); *Townsend v. Edelman*, 518 F.2d 116, 123–24 (7th Cir.1975); *Lichtenstein v. Lichtenstein*, 481 F.2d 682 (3d Cir.1973), *cert. denied*, 414 U.S. 1144, 94 S.Ct. 895, 39 L.Ed.2d 98 (1974); *First National Bank v. Dunham*, 471 F.2d 712, 713 (8th Cir.1973); and *Bell v. School Board*, 321 F.2d 494 (4th Cir.1963).

**6.** Cases in which defendants have been awarded attorney fees in frivolous or vexatious lawsuits brought against them in bad faith include *Copeland v. Martinez*, 603 F.2d 981 (D.C.Cir.1979), *cert. denied*, 444 U.S. 1044, 100 S.Ct. 730, 62 L.Ed.2d 729 (1980) and *Guardian Trust Co. v. Kansas City Southern R. Co.*, 28 F.2d 233 (8th Cir.1928). *See also Lipsig v. National Student Marketing Corp.*, 663 F.2d 178 (D.C.Cir.1980) (plaintiff awarded fees for defending frivolous counterclaim). *Cf. Miracle Mile Associates v. City of Rochester*, 617 F.2d 18 (2d Cir.1980) (fee award reversed; claim not frivolous or in bad faith just because without merit). Similarly, maintaining a frivolous defense in bad faith, forcing plaintiff to go to court, may result in a fee award for the plaintiff. *See Carter v. Noble*, 526 F.2d 677 (5th Cir.1976); *Fairley v. Patterson*, 493 F.2d 598 (5th Cir.1974); *Monroe v. Board of Commissioners*, 453 F.2d 259 (6th Cir.), *cert. denied*, 406 U.S. 945, 92 S.Ct. 2045, 32 L.Ed.2d 333 (1972); *McEnteggart v. Cataldo*, 451 F.2d 1109 (1st Cir.1971), *cert. denied*, 408 U.S. 943, 92 S.Ct. 2878, 33 L.Ed.2d 767 (1972).

were not found to have acted in bad faith by causing the plaintiff's illness; in fact, the trial court found the defendants not negligent. *Vaughan v. Atkinson*, 291 F.2d 813, 813 (4th Cir.1961), *rev'd on other grounds*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). Instead, the Supreme Court allowed an attorney fee award because defendants had callously refused to pay maintenance and cure that "was plainly owed [plaintiff] under laws that are centuries old." 369 U.S. at 531, 82 S.Ct. at 999.

The cases allowing attorney fees where there is bad faith in the acts giving rise to the substantive claim are generally not as clear as those that have considered bad faith of the first two types.[7] In *Rolax v. Atlantic Coast Line R. Co.*, 186 F.2d 473 (4th Cir.1951), the court approved an attorney fee award because of the defendant's "oppressive conduct" giving rise to the claim. *Rolax* was a suit by minority railroad firemen seeking an injunction and damages in a challenge to a discriminatory collective bargaining agreement. The court relied on the fact that the damages sought were less than the amount of attorney fees incurred and were relatively unimportant compared to the injunctive relief, which would benefit all minority firemen employed by the railroad. The fee award in *Rolax* seems to be more properly based on the common benefit exception, discussed in part III *infra*.[8] In *McQuiston v. Marsh*, 707 F.2d 1082 (9th Cir.1983), the Ninth Circuit remanded a claim for attorney fees for a determination of whether the defendant had acted in bad faith either before or during the litigation. This implies that the court would allow attorney fees based on bad faith in the underlying acts. The defendant's position had previously been found substantially justified and so the only possible pre-litigation bad faith was in

the underlying acts. *Schlein v. Smith*, 160 F.2d 22 (D.C.Cir.1947), often cited for the bad faith exception, involved a common-law fraud claim. The court approved an attorney fee award as a part of punitive damages allowable in willful fraud cases. *Schlein* is therefore not applicable to an attorney fee award arising from a federal statutory claim for which punitive damages are inappropriate.

■ To allow an award of attorney fees based on bad faith in the act underlying the substantive claim would not be consistent with the rationale behind the American Rule regarding attorney fees. By refusing to penalize a litigant whose judgment concerning the merits of his position turns out to be in error, the American Rule protects the right to go to court and litigate a non-frivolous claim or defense. The unsuccessful litigant is not penalized even when an injured party whose claim is upheld is not made completely whole because of the cost of litigation. The unsuccessful litigant may be penalized, however, if the litigation was not maintained in good faith. In such a case, the successful party has ordinarily suffered two wrongs: one in the events giving rise to the litigation, and another in the wrongful conduct or instigation of the litigation. Attorney fees incurred while curing the original wrong are not compensable because they represent the cost of maintaining open access to an equitable system of justice. That policy is not served, however, by denying fee awards when the justice system has been wrongfully used. There is no need to maintain open access for those who abuse the system. The bad faith exception applies when the need for open access is absent. *See Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1309 (2d Cir.1973) ("Assessment of counsel fees under such cir-

---

**7.** *But see Richardson v. Communication Workers*, 530 F.2d 126 (8th Cir.) (award of attorney fees clearly upheld on the basis of the union's bad faith breach of duty of fair representation, which gave rise to the underlying claim), *cert. denied*, 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976).

**8.** Since the "common benefit" exception was not recognized as a distinct exception until the Supreme Court's decisions in *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) and *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), that terminology was not available to the court in *Rolax*.

cumstances in no way conflicts with the primary justification for the rule against the shifting of counsel fees, namely, that the defendant should not be discouraged from fairly contesting the plaintiff's claims.").[9]

The rationale behind the American Rule remains intact when there is bad faith in the event underlying the substantive claim. A person who harms another in bad faith is nonetheless entitled to defend a lawsuit in good faith. "A party is not to be penalized for maintaining an aggressive litigation posture...." *Lipsig v. National Student Marketing Corp.*, 663 F.2d 178, 180–81 (D.C.Cir.1980).

The development of the bad faith exception supports the view that the bad faith exception does not apply where there is no bad faith after the original claim arises. In *Vaughan*, attorney fees were awarded to recompense not the original injury, but the secondary injury resulting from the failure to provide maintenance and cure that was indisputably owed.

Shimman argues that the attorney fee award in this case was justified by the Supreme Court's statement in *Hall v. Cole*, 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973) "that 'bad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Hall v. Cole*, however, should not be read as expanding the bad faith exception to the American Rule.

The Court in *Hall* was not presented with the question of whether the bad faith exception applied to bad faith in the acts giving rise to the underlying claim. The question before the Court in *Hall* was whether the "common fund" exception could be extended to a case where there was no common fund but a common benefit of injunctive relief. There was no finding in *Hall* that the defendants had acted in bad faith.

More importantly, the statement in *Hall* relied on by Shimman should not be read as referring to the bad faith exception at all. It is critical to understand the context in which the statement on bad faith was made. The Court found that the plaintiff in *Hall* was entitled to fees under a common benefit theory. Defendants were arguing that since the common benefit theory is an equitable doctrine, the district court had abused its discretion in awarding such fees where it had found that defendants acted in good faith in expelling plaintiff and plaintiff had arguably been found to have acted in bad faith. Answering those arguments, the Court said:

> Petitioners also contend that the award of attorneys' fees in this case was improper because the District Court, in denying respondent's claim for punitive damages, found that "the defendants, in good faith, believed that they had a right to charge and discipline [respondent] for his actions." It is clear, however, that "bad faith" may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation. And, as the Court of Appeals noted, the conduct of this particular litigation was marked by "the dilatory action of the union and its officers...." 462 F.2d [777], at 780 [ (1972) ]. Moreover, although the presence of "bad faith" is essential to "fee-shifting" under a "punishment" rationale, neither the presence nor absence of "bad faith" is in any sense dispositive where attorneys' fees are awarded to the successful plaintiff under the "common

---

**9.** Fees awarded under the bad faith exception are punitive in nature, but are designed to punish the abuse of the judicial process rather than the original wrong. The effect of a fee award based on bad faith in the initial wrongdoing would be to punish that conduct. Courts have held that attorney fees based on bad faith securities law violations are not allowable because the securities laws expressly deny recovery of punitive damages. *See Huddleston v. Herman &*

*MacLean,* 640 F.2d 534 (5th Cir.1981); *Straub v. Vaisman & Co.,* 540 F.2d 591 (3d Cir.1976). It is not entirely clear whether punitive damages are allowable in LMRDA § 412 suits. See discussion in *Shimman v. Frank,* 625 F.2d 80, 101 (6th Cir.1980). If punitive damages are not allowable, this would provide an alternative rationale for disallowing the attorney fee award in this case. We need not resolve this question in the present case, however.

benefit" rationale recognized in *Mills* and operative today. 412 U.S. at 15, 93 S.Ct. at 1951. The Court's discussion of bad faith was entirely within the context of determining whether the relative equities of the parties' positions precluded application of the equitable common benefit doctrine. The Court did mention the bad faith exception earlier in the *Hall* opinion:

> Thus, it is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons." 6 J. Moore, Federal Practice ¶ 54.77[2], p. 1709 (2d ed. 1972).

412 U.S. at 5, 93 S.Ct. at 1946. *Moore's Federal Practice* precedes the quoted words with the statement, "where an unfounded action or defense is brought or maintained...." It thus is clear that *Hall* did not extend the bad faith exception.[10]

In *Richardson v. Communication Workers,* 530 F.2d 126, 132 (8th Cir.1976), the Eighth Circuit cited *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), as establishing an exception to the American Rule "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" The court then found that the defendant unions had acted in bad faith in breaching their duty of fair representation, and held that "the Unions' bad faith comes within the bad faith exception noted in *Alyeska.*" 530 F.2d at 133. The Supreme Court's opinion in *Alyeska* merely cites *F.D. Rich Co.* and *Vaughan* as establishing the bad faith exception. We do not agree with the Eighth Circuit that in *Alyeska* the Court intended to expand the bad faith exception to include bad faith in the conduct giving rise to the underlying claim.

We therefore hold that the bad faith exception to the American Rule does not allow an award of attorney fees based only on bad faith in the conduct giving rise to the underlying claim.

The District Court's award of attorney fees, based on this type of bad faith, may therefore not be justified by the bad faith exception.[11] We also note that the record would not support a finding of bad faith of a type that would justify a fee award. There is no indication that the defense of

---

10. In *Huecker v. Milburn,* 538 F.2d 1241 (6th Cir.1976), a suit challenging Kentucky's delay in processing welfare applications, the district court had awarded attorney fees under a "private attorney general" theory and had not decided whether fees were also justified under a bad faith theory. This Court reversed the award of attorney fees under the "private attorney general" theory and remanded for consideration of whether fees were allowable on the basis of bad faith. The Court cited *Hall v. Cole* for the proposition that the "'bad faith' which justifies the award of attorneys' fees may be demonstrated in the conduct which necessitated the action or in conduct occurring during the course of the action." 538 F.2d at 1245 n. 9. The Court also noted that on remand an award of attorney fees based on bad faith could be "justified by Appellants' conduct either in the processing of applications and the award of benefits or in the defense of the law suit." 538 F.2d at 1246 n. 12. Under the facts in *Huecker,* the reference to bad faith "in the processing of applications and the award of benefits" could only refer to bad faith in the conduct giving rise to the underlying claim. These statements in *Huecker* are dicta, since the district court had not awarded fees under a bad faith theory, and these dicta are disapproved to the extent inconsistent with our holding today. We also recognize that our interpretation of *Hall v. Cole* is inconsistent, at least implicitly, with the Ninth Circuit's decisions in *McQuiston v. Marsh,* 707 F.2d 1082 (9th Cir.1983) and *Dogherra v. Safeway Stores, Inc.,* 679 F.2d 1293 (9th Cir.), *cert. denied,* 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982).

11. In the earlier appeal in this case, *Shimman v. Frank,* 625 F.2d 80 (6th Cir.1980), a panel of this Court affirmed the District Court's award of attorney fees incurred at trial level. The panel noted three possible rationales to support the fee award: (1) bad faith under *Hall v. Cole;* (2) bad faith under Ohio law allowing attorney fee awards in assault and battery cases; and (3) common benefit under *Hall v. Cole,* 625 F.2d at 100–01. The panel held that the fee award was supported by defendants' malicious conduct, and did not reach the common benefit theory. Ohio law was clearly sufficient to support the award of attorney fees incurred at trial. *See* part V *infra.* The panel's decision in *Shimman v. Frank* is overruled to the extent that it purported to rely on the bad faith exception under federal law to support the award of attorney fees.

this lawsuit was conducted in bad faith; nor is this a case where the defendant contumaciously refused to allow the plaintiff what was plainly owed, thus forcing the plaintiff to go to court. Although it may have been plain that Shimman's rights were infringed, questions as to which defendants were liable and for what amounts were very much in doubt at least through the 1980 appeal. In fact, defendants were partially successful both in the trial and in the 1980 appeal.

The attorney fee award is therefore not supportable under the bad faith exception. We next turn to the other rationales proposed by Shimman as support for the fee award.

### III. Common Benefit

 Although the District Court did not reach the question, Shimman also contends that the award of attorney fees is supported by the "common benefit" exception to the American Rule regarding attorney fees.[12] The common benefit exception is an equitable exception to the American Rule which developed as an extension of the "common fund" exception. *Hall v. Cole*, 412 U.S. 1, 5–6 n. 7, 93 S.Ct. 1943, 1946–1947 n. 7, 36 L.Ed.2d 702 (1973). The common fund exception allows an award of fees to a plaintiff whose suit creates, enlarges, or protects a fund shared by members of a class. *See, e.g., Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885); *Trustees of the Internal Improvement Fund v. Greenough*, 105 U.S. 527, 15 Otto 527, 26 L.Ed. 1157 (1882).

In *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the Supreme Court held that the rationale of the common fund exception extended to a situation where no monetary fund was at stake. *Mills* was a derivative suit brought by shareholders in a corporation to set aside an unlawful merger of their corporation with another. The Court allowed a fee award to the successful plaintiffs, reasoning that the common fund exception allows fees

> where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself.... To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense.

396 U.S. at 392, 90 S.Ct. at 625. This rationale was applied to a Title I LMRDA case in *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). There the plaintiff obtained injunctive relief against the union for violating the free speech provisions of the LMRDA. The Supreme Court found the award of attorney fees governed by the rationale of *Mills* because the plaintiff "necessarily rendered a substantial service to his union as an institution and to all of its members ... [by] dispel[ling] the 'chill' cast upon the rights of others." 412 U.S. at 8, 93 S.Ct. at 1948.

Although in the present case Shimman was awarded compensatory and punitive damages for personal injuries rather than injunctive relief, Shimman argues that he has rendered a substantial benefit to the union's members by in effect ending oppression of dissident members and restoring union democracy. The District Court did not enjoin further oppression, but Shimman alleges that his suit was a "catalyst" leading to change in the union leadership. Whether or not this constitutes a substantial benefit to the union membership, however, the rationale of the common benefit exception does not apply to this case.

In *Mills* the Supreme Court extended the common fund exception to litigation that created a common benefit, whether a monetary fund or a less tangible benefit. The present litigation did create a large monetary fund composed of compensatory and punitive damages. This fund, however, is not held in common but directly benefits only Shimman. *Mills* and *Hall* did not

---

12. This question was also not reached by the panel of this Court in the 1980 appeal. *See* *Shimman v. Frank*, 625 F.2d 80, 100–01 (6th Cir.1980).

change the requirement that the benefit be received in common by those against whom the fee award operates.

■ Shimman's damage award was not a common benefit, but he claims that the effect of his suit was to produce the additional, common benefit of restoring union democracy. An incidental benefit such as this will not justify a fee award, however, in light of the requirement that the fee award operate so as to impose the burden in proportion to the benefits received. In *Mills* the Court held an attorney fee award proper:

> in cases where the litigation has conferred a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs *proportionately* among them.

396 U.S. at 393–94, 90 S.Ct. at 626–27 (emphasis added). *See also Hall v. Cole*, 412 U.S. at 5, 93 S.Ct. at 1946. In *Wilderness Society v. Morton*, 495 F.2d 1026, 1029 (D.D.C.) (en banc), *rev'd on other grounds sub nom. Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the court held that "imposing attorneys' fees on Alyeska will not operate to spread the costs of litigation proportionately among these beneficiaries, the key requirement of the 'common benefit' theory." The Supreme Court in *Alyeska* upheld the court of appeals on this point. 421 U.S. at 245 n. 14, 95 S.Ct. at 1616 n. 14. Shimman received an award, as modified on appeal, of $107,067.99 in compensatory damages and $145,000.00 in punitive damages, yet if the fee award were upheld he would pay no greater portion of the fees than any other union member who benefited only incidentally.[13] The fee award would not distribute fees in proportion to benefits.[14]

This is clearly not a case where the plaintiff "benefits a group of others in the same manner as himself." *Mills*, 396 U.S. at 392, 90 S.Ct. at 625. Shimman obtained redress for personal injuries not shared by other union members. The purpose of the common benefit exception is to shift the costs of litigation to "the class that benefited from them and that would have had to pay them had it brought the suit." *Hall v. Cole*, 412 U.S. at 7, 93 S.Ct. at 1947; *Mills*, 396 U.S. at 397, 90 S.Ct. at 628. Other union members could not have brought suit to redress Shimman's personal injuries.

Limited exceptions to the American Rule have been sanctioned "when overriding considerations of justice seemed to compel such a result." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967). Union members here were not enriched unjustly at Shimman's expense. *See Mills*, 396 U.S. at 392, 90 S.Ct. at 625; *Hall*, 412 U.S. at 6, 93 S.Ct. at 1947. Overriding considerations of justice do not compel an appellate fee award to a plaintiff

---

**13.** Since there was no injunction in this case, the benefits received by other union members were achieved not by direct operation of the judgment, but rather were the result of a realization that the union would have to reform itself or risk exposure to further liability. Society as a whole always benefits through general deterrence when the law is enforced. Allowing a fee award based on such benefits, however, would come close to accepting the "private attorney general" rationale, which was rejected by the Supreme Court in *Alyeska*. The common benefit theory should not be allowed to merge into the private attorney general approach. *Satoskar v. Indiana Real Estate Commission*, 517 F.2d 696 (7th Cir.), *cert. denied*, 423 U.S. 928, 96 S.Ct. 276, 46 L.Ed.2d 256 (1975).

**14.** Several courts have found an award of attorney fees appropriate in cases where the plaintiff received a damage award. *See Bise v. International Brotherhood of Electrical Workers*, 618 F.2d 1299 (9th Cir.1979), *cert. denied*, 449 U.S. 904, 101 S.Ct. 279, 66 L.Ed.2d 136 (1980); *Rosario v. Amalgamated Ladies Garment Cutters' Union, Local 10*, 605 F.2d 1228 (2d Cir.1979), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980); *Emmanuel v. Omaha Carpenters District Council*, 560 F.2d 382 (8th Cir. 1977); *McDonald v. Oliver*, 525 F.2d 1217 (5th Cir.), *cert. denied*, 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976). *In Rosario* and *McDonald*, plaintiffs obtained an injunction in addition to damages. None of these decisions contain any discussion of the proportionality language in *Mills, Hall,* and *Alyeska*.

awarded punitive damages well in excess of the fees sought.

This is not a proper case for an award of attorney fees under the common benefit theory. The District Court's award can not be justified on that basis.

## IV. Section 1988

In counts II and III of his complaint, Shimman alleged violations of 42 U.S.C. §§ 1985(3) and 1986. These counts were dismissed by the District Court, and the panel of this Court that heard the 1980 appeal did not reach Shimman's cross-appeal of that dismissal because recovery on those counts would have been duplicative. *See Shimman v. Frank*, 625 F.2d 80, 86 n. 10 (6th Cir.1980). Shimman now argues that he has nonetheless prevailed in an "action or proceeding to enforce" sections 1985 and 1986, and thus that the award of attorney fees incurred on appeal is allowed by 42 U.S.C. § 1988.

In *Maher v. Gagne*, 448 U.S. 122, 130–33, 100 S.Ct. 2570, 2575–77, 65 L.Ed.2d 653 (1980), the Supreme Court held that an attorney fee award is allowed under § 1988, and thus not barred by the eleventh amendment, "in a case in which the plaintiff prevails on a wholly statutory, non-civil-rights claim pendent to a substantial constitutional claim" whether or not the plaintiff actually prevailed on the civil rights claim. In *Seals v. Quarterly County Court*, 562 F.2d 390 (6th Cir.1977) (citing H.R.Rep. No. 94–1558, 94th Cong. 2d Sess. 4 n. 7 (1976)), this Court held that § 1988 allowed an attorney fee award when plaintiff prevailed on a state law claim pendent to a substantial federal civil rights claim that was left undecided. Citing *Williams v. Thomas*, 692 F.2d 1032 (5th Cir.1982), *cert. denied*, — U.S. —, 103 S.Ct. 3115, 77 L.Ed.2d 1369 (1983), Shimman argues that the same rationale applies where the defendant prevails on the civil rights claim at trial but the issue is left unresolved on appeal. We need not decide this question,

however, since Shimman's claims under 42 U.S.C. §§ 1985 and 1986 were not substantial.

Shimman's civil rights claims, as explained in Shimman's Memorandum of Law in Opposition to Defendants' Motions to Dismiss, are based on the theory that defendants conspired to deprive the class consisting of union members opposed to the incumbent union leadership of the equal protection of the laws by violating the LMRDA. Shimman argues that under the rationale of *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the phrase "the laws" in 42 U.S.C. § 1985(3) can include federal statutory law as well as the Constitution. It is clear, however, that Shimman has not alleged or proven the kind of discriminatory intent necessary to support a § 1985(3) violation.[15] In *Griffin v. Breckinridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), the Supreme Court held that "[t]he language [in § 1985(3)] requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." (Emphasis in original; footnote omitted.) The Supreme Court recently applied this standard in a labor union context in *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). In *Scott* the plaintiffs had claimed that they were beaten by defendants in the course of a violent campaign against non-union workers at a particular construction site. The Court first noted that it was "a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause," 103 S.Ct. at 3359, and then held that § 1985(3) did not reach conspiracies motivated by "anti-union, anti-nonunion, or anti-employer biases," 103 S.Ct. at 3361. If § 1985(3) does not reach animus against non-union workers, it cer-

---

**15.** Since the § 1986 claim is dependent on the § 1985(3) claim, see *Mollnow v. Carlton*, 716 F.2d 627, 632 (9th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1595, 80 L.Ed.2d 547 (1984); *Williams v. St. Joseph Hospital*, 629 F.2d 448, 452 (7th Cir.1980), we need not discuss it separately.

tainly does not reach animus one union faction holds for another. Even without the assistance of *Scott*, Shimman's § 1985(3) claim was clearly foreclosed by *Griffin*. Discrimination against the "class" of dissenting union members is no more "invidious" than would be discrimination against any arbitrarily-chosen group of people whose rights may have been violated.

Shimman's civil rights claims were insubstantial, and his suit was not an "action or proceeding to enforce" §§ 1985 or 1986. The award of attorney fees is therefore not supported by 42 U.S.C. § 1988.[16]

Even if Shimman's civil rights claims were substantial, it appears that he would not be entitled to attorney fees under § 1988. Shimman's §§ 1985 & 1986 claims are entirely dependent on his LMRDA claim. Shimman could not have won on the §§ 1985 & 1986 claims unless he also won on the LMRDA claim, and if he had won on both he would not have been entitled to any additional relief by virtue of the civil rights claims. In any event, therefore, the civil rights claims could have had nothing to do with the success of Shimman's suit. In *Smith v. Robinson*, —— U.S. ——, —— n. 12, 104 S.Ct. 3457, 3468 n. 12, 82 L.Ed.2d 746 (1984), the Supreme Court noted that "where it is clear that the claims that provide for attorney's fees had nothing to do with a plaintiff's success, *Hensley v. Eckerhart*, [461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40], requires that fees not be awarded on the basis of those claims."

## V. Ohio Law

 Finally, Shimman argues that the appellate fee award may be affirmed under Ohio law concerning the pendent state assault and battery claim.[17] Ohio law allows attorney fees to successful plaintiffs in assault and battery cases, or in any case in which punitive damages are allowable. *E.g., Roberts v. Mason*, 10 Ohio St. 277 (1859); *Columbus Finance, Inc. v. Howard*, 42 Ohio St.2d 178, 327 N.E.2d 654 (1975); *Langhorst v. Riethmiller*, 52 Ohio App.2d 137, 368 N.E.2d 328 (1977). An award of punitive damages and attorney fees incurred at trial was affirmed as modified in the 1980 appeal in this case and is not challenged here. *See Shimman v. Frank*, 625 F.2d 80 (6th Cir.1980). The difficult question is whether a separate award of fees is allowable under Ohio law for attorneys' services on appeal. We are cited to no Ohio case and have been unable to find one in which attorney fees on appeal were awarded or discussed in a tort action.[18]

Support for the appellate fee award cannot be obtained by examining the rationale behind the Ohio rule. It is unclear whether attorney fees in such cases are considered compensatory or punitive damages. Indeed, the Ohio Supreme Court without clarifying the matter has acknowledged that its decisions on that point are in conflict. *See Sorin v. Board of Education*, 46 Ohio St.2d 177, 181 & nn. 2, 3, 347 N.E.2d 527 (1976).[19] However, whatever their basis,

---

**16.** Since 42 U.S.C. § 1988 does not support any award of fees in this case, we need not decide whether *Buian v. Baughard*, 687 F.2d 859 (6th Cir.1982) forecloses the availability under § 1988 of fees incurred in an appeal where neither party was awarded costs.

**17.** Federal courts must generally apply state law regarding attorney fees to a state law claim pendent to a federal claim. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622 n. 31, 44 L.Ed.2d 141 (1975).

**18.** In *In re Estate of Marker*, 33 Ohio L.Abst. 209, 210, *aff'd on other grounds*, 137 Ohio St. 89, 27 N.E.2d 1019 (1940), a suit against administrators of an estate, the Ohio Court of Appeals seemed to suggest that an attorney fee award

could include work done on appeal. *Marker* was a common fund case, however, and not a tort case allowing for punitive damages. *Marker* is thus of no assistance when considering attorney fees in willful tort cases, which are based on an entirely different rationale.

**19.** Of the three cases cited in *Sorin* for the proposition that attorney fees are punitive damages, only one supports that proposition, and only by inference. *See Smithhisler v. Dutter*, 157 Ohio St. 454, 105 N.E.2d 868 (1952). *Cf. Columbus Finance v. Howard*, 42 Ohio St.2d 178, 327 N.E.2d 654 (1975); *Peckham Iron Co. v. Harper*, 41 Ohio St. 100 (1884). The majority of Ohio cases call attorney fees compensatory. See list at 30 Ohio Juris. 3d *Damages* § 114 n. 5. However, we must accept the Ohio Supreme

the manner in which attorney fees are to be awarded in such cases would appear to preclude a separate award for appellate fees. In a jury trial an award of attorney fees in such cases is made by the jury as part of their verdict:

> [B]ut in cases where the act complained of is tainted by fraud, or involves an ingredient of malice, or insult, the jury, which has power to punish, has necessarily the right to include the consideration of proper and reasonable counsel fees in their estimate of damages.

*Roberts v. Mason*, 10 Ohio St. 277, 278, 283 (1859). *See also United Power Co. v. Matheny*, 81 Ohio St. 204, 90 N.E. 154 (1909); *Finney v. Smith*, 31 Ohio St. 529 (1877); *Hopping v. Sullivan*, 16 Ohio L.Abst. 151 (1934); *Fitzgerald v. Rinebold*, 12 Ohio L.Rep. 199 (1914); *August v. Finnerty*, 10 Ohio C.C. (n.s.) 433 (1908). Moreover, no evidence is permitted concerning the amount of a reasonable attorney fee. In *Roberts*, 10 Ohio St. at 283, the Ohio Supreme Court noted: "No evidence in this case appears to have been given to the jury on the subject of counsel fees; nor do we think such evidence ought to have been given or received." *See also Stevenson v. Morris*, 37 Ohio St. 10, 22 (1881) ("Counsel fees are … to be allowed … only as an item of estimated general damages to be included in the discretion of the jury."); *Hudson v. Voigt*, 15 Ohio C.C. 391 (1898).

The instant case was tried to the court. However, the judge would be bound to apply the same rule as to damages as the jury—to include as part of the general damages an amount for attorney fees without evidence as to what fees were actually charged or reasonable. This procedure was not followed with respect to the award of appellate fees in this case, and is inconsistent with the possibility of any award of appellate attorney fees whatsoever.

*Gates v. City of Toledo*, 57 Ohio St. 105, 48 N.E. 500 (1897), was a suit for attorney fees under a hold harmless clause in a contract. In dicta the Ohio Supreme Court noted that:

> in the cases upon tort where counsel fees have been considered, although treated as part of plaintiff's compensation, they relate to such probable expense of this character *as would be incurred in the case on trial*, and which would be present in the mind of the jury, but that no proof was allowed as to their extent or value.

57 Ohio St. at 112, 48 N.E. 500 (emphasis added). Although *Gates* was not a tort case, and the possibility of appellate fees was not before the court, this language indicates the nature of fee awards under Ohio tort law.

In the absence of any Ohio decision awarding fees incurred on appeal, we are reluctant to expand the Ohio rule allowing fees in certain tort cases beyond the circumstances considered by Ohio precedent. Ohio generally follows the American Rule disallowing attorney fees. *Sorin v. Board of Education*, 46 Ohio St.2d 177, 179, 347 N.E.2d 177 (1976). In *Sorin*, the Ohio Supreme Court expressed reluctance to expand the Ohio tort rule to include statutory violation cases because "any departure from such a deeply-rooted policy as the exclusion of attorney fees as costs is a matter of legislative concern." 46 Ohio St.2d at 179–80, 347 N.E.2d 177. Any departure from the American Rule by allowing appellate fees must similarly be left to Ohio, not the federal courts.

The award of appellate attorney fees in this case is not supported by Ohio law.

## VI. Conclusion

The attorney fee award in this case is not justified by any of the theories proposed by Shimman. The District Court had no basis on which to award fees for work done on appeal. Accordingly, the judgment is reversed and the case is remanded to the District Court, with directions to enter an order denying attorney fees.

GEORGE CLIFTON EDWARDS, Jr., Circuit Judge, concurring.

I concur in the result set forth in the en banc majority opinion and in the opinion to

Court's characterization of the question as un- settled.

the extent that it relies on the following two reasons: 1) this Court remanded this case to the District Court in *Shimman v. Frank,* 625 F.2d 80 (6th Cir.1980) (after modifying and affirming the District Court judgment) specifically ordering "each side will bear its own costs." There is no justification in this record for the District Court faced with this instruction to order Defendants to pay Plaintiff's attorney's fees. 2) The award of attorney's fees in this case is also barred by *Alyeska Pipeline Services Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), since Plaintiff's fee claims do not fit within any of the exceptions to the American Rule recognized in *Alyeska.*

KEITH, Circuit Judge, concurring.

I agree with the concurrence set forth by Judge Edwards. I write separately to express the view that the majority opinion is incorrect to place needlessly broad limits on the bad faith exception to the American Rule. The majority would constrain the bad faith exception to exclude the recovery of attorney's fees in cases involving bad faith in the conduct that leads to the underlying substantive claim. The Supreme Court's statement that "it is clear, however, that 'bad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation" has been used in support of awarding attorneys' fees. *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973). The Court cited this language seven years later in support of the proposition that attorney's fees could be awarded when litigation is *conducted* in bad faith rather than just *filed* in bad faith. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980).

The *Hall* dicta has also been quoted by the Ninth Circuit as well as this Court in determining whether bad faith in the conduct leading to the underlying claim creates an exception to the American Rule. *McQuiston v. Marsh,* 707 F.2d 1082, 1086 (9th Cir.1983); *Dogherra v. Safeway Stores, Inc.,* 679 F.2d 1293, 1298 (9th Cir.),

*cert. denied,* 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982); *Huecker v. Milburn,* 538 F.2d 1241, 1245 n. 9 (6th Cir.1976). As the majority notes, this Court has cited *Hall* in dicta "for the proposition that 'bad faith' which justifies the award of attorneys' fees may be demonstrated in the conduct which necessitated the action or in conduct occurring during the course of the action." Majority Opinion at 1233 (citing and quoting *Huecker v. Milburn,* 538 F.2d at 1245 n. 9. The majority concedes that, given the facts in *Huecker,* this Court must have been referring to bad faith in the conduct which gave rise to the underlying claim.

The Ninth Circuit has also adopted the dicta in *Hall* to support similar awards of attorney's fees. In holding that a California district court committed clear error in finding bad faith on the part of a defendant employer that had dismissed an employee, the Ninth Circuit left little doubt that attorney's fees could be awarded where there was bad faith in the conduct that led to the underlying claim. *Dogherra v. Safeway Stores, Inc.,* 679 F.2d at 1298. The Ninth Circuit implicitly upheld this proposition a year later by remanding a case to the district court for resolution of a factual dispute "as to the bad faith, if any, of the [defendant] both before and during the course of th[e] litigation" in order to determine if attorney's fees should be assessed. *McQuiston v. Marsh,* 707 F.2d at 1086. (Citing *Hall v. Cole,* 412 U.S. at 15, 93 S.Ct. at 1951).

Given the interpretation of Hall by the courts in *Huecker* and *McQuiston* and the refusal of the Supreme Court to grant certiorari in *Dogherra* to overrule this interpretation, the majority should be less aggressive in limiting the bad faith exception to the American Rule. Despite contrary rulings by the Supreme Court and by this Court, the majority opinion would have the effect of preventing the award of attorney's fees in cases where plaintiffs are forced to bring legal action because of a defendant's flagrant violation of their legal rights. *Vaughan v. Atkinson,* 369 U.S. 527, 530–31, 82 S.Ct. 997, 999–1000, 8

L.Ed.2d 88 (1962) (Court held that seaman could be awarded attorney's fees as part of damages in suit against shipowners who failed to grant plaintiff his clear legal right to maintenance and cure while recovering from an illness contracted aboard ship). *Huecker v. Milburn*, 538 F.2d at 1245 n. 9 (citing and quoting *Monroe v. Board of Commissioners*, 453 F.2d 259, 263 (6th Cir.), *cert. denied*, 406 U.S. 945, 92 S.Ct. 2045, 32 L.Ed.2d 333 (1972)). In this case, the clear failure to grant Shimman his right to union participation without interference supports the original award of attorney's fees. However, in addition to this Court's pronouncement equally allocating costs on appeal, bad faith such as the failure to recognize clear legal rights is not presented as justification for an award of attorney's fees.

Given the precedents cited above, I am of the view that the majority should restrain its ruling on the bad faith exception only to the issue of granting attorney's fees for the appeal in question.