comically small -- the right to read the plaintiff's one letter -- we nonetheless held by implication that it may disproportionately benefit the union members if they did not help foot the legal bill.

As these cases demonstrate, the proportionality of benefit to cost in an LMRDA action, like the award of punitive damages, does not admit to an easy calculus. *Cf. BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 582 (1996). Ultimately, proportionality is inescapably a fact-intensive investigation. Plaintiffs who defy a particularly egregious abuse of power through an LMRDA action may confer a greater benefit upon that union's membership than a plaintiff who brings suit against a less egregious violator. The common benefit exception is an exercise of a court's equitable powers, *Hall*, 412 U.S. at 4-5, and like any equitable remedy, its propriety will change from circumstance to circumstance. *See Lussier v. Runyon*, 50 F.3d 1103, 1110 (1st Cir. 1995) (noting that "the hallmarks of equity have long been flexibility and particularity").

For that reason, I believe we should be more deferential to the trial court, and should disturb the district court's decision only where the proportion between benefit to the union members and cost to the plaintiffs is clearly unsupported by the record. *Cf. Murray v. Laborers Union Local No. 324*, 55 F.3d 1445, 1453 & n.15 (9th Cir. 1995) (holding that the question of whether a plaintiff has conferred a "substantial benefit" to permit award of attorney fees is reviewed for clear error). There was clearly sufficient evidence in this case for the district court to conclude that the union had behaved particularly badly, and that the union members' rights were seriously jeopardized. It was therefore rational for the court to conclude the union members should pay their portion of the litigation costs. For these reasons, I respectfully dissent.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0135P (6th Cir.)
File Name: 02a0135p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————

CHARLES ARGENTINE; JOHN GOOCH; ROSE ANN WINGO, fiduciary for the estate of CLARENCE WINGO,
  *Plaintiffs-Appellees/*
  *Cross-Appellants,*

   *v.*

UNITED STEELWORKERS OF AMERICA, AFL-CIO, CLC,
  *Defendant-Appellant/*
  *Cross-Appellee.*

Nos. 00-3448/
3516/3788

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 96-00463—Algenon L. Marbley, District Judge.

Argued: November 1, 2001

Decided and Filed: April 18, 2002

Before: SUHRHEINRICH and COLE, Circuit Judges; COLLIER, District Judge.[*]

_____

[*] The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

_____

**COUNSEL**

**ARGUED:** Andrew D. Roth, BREDHOFF & KAISER, Washington, D.C., for Appellant. Ira J. Mirkin, GREEN, HAINES, SGAMBATI COMPANY, Youngstown, Ohio, for Appellees. **ON BRIEF:** Andrew D. Roth, Robert Alexander, BREDHOFF & KAISER, Washington, D.C., Stewart R. Jaffy, STEWART JAFFY & ASSOCIATES, Columbus, Ohio, for Appellant. Ira J. Mirkin, Barry R. Laine, Robert S. Moore, GREEN, HAINES, SGAMBATI COMPANY, Youngstown, Ohio, for Appellees.

COLLIER, D. J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. COLE, J. (pp. 21-24), delivered a separate dissenting opinion.

_____

**OPINION**

_____

CURTIS L. COLLIER, District Judge. Defendant-Appellant United Steelworkers of America ("USWA") appeals judgment for Plaintiffs-Appellees on their claim of unlawful removal from their local union offices and imposition of a trusteeship on their local union, Local 5644. Plaintiffs cross-appeal the denial of their motion for summary judgment. For the reasons stated below we **AFFIRM** judgment for Plaintiffs but **REVERSE** the district court's award of attorney fees. For jurisdictional reasons we do not reach Plaintiffs' cross-appeal.

**BACKGROUND**

Defendant United Steelworkers of America ("USWA") is an international labor union with local affiliates. One of those local affiliates, Local 5644, represents workers at Titanium Metals Company ("Timet") in Toronto, Ohio.

monetary award. 744 F.2d at 1234.[1] The rationale was that the fee award must "operate so as to impose the burden in proportion to the benefits received." *Id.* at 1235.

The catch, of course, is what is proportional? The unstated assumption in *Shimman* is that the union members' Title I rights were worth something less than $250,000 minus the plaintiff's costs to litigate the case. That assumption is adopted by the majority decision in this case. Essentially, the majority attaches a price tag to the local members' rights at around half of Plaintiffs' total recovery. However, neither the *Shimman* court nor the majority in this case offer any reason why we should discount the union members' free speech rights by the amount any particular plaintiff receives in compensatory or punitive damages.

Furthermore, the majority's proportionality test cannot be squared with another case from this Circuit, coincidentally also called *Shimman*. In *Shimman v. Miller*, a plaintiff brought an LMRDA action seeking broad monetary and injunctive relief against his union, and received, in the end, only the right to have his one letter printed, in its entirety, in a union newspaper. 995 F.2d 651, 655 (6th Cir. 1993). Nevertheless, we remanded that case to the district court to consider awarding attorney fees because the plaintiff's success had "rendered a substantial service to his union as an institution and to all of its members by vindicating his own right of free speech." *Id.* at 656. Although on its face the benefit to the union members in *Shimman v. Miller* is almost

_____

[1]Confusingly, we later stated that this benefit was also "incidental." *Shimman*, 744 F.2d at 1234. The relationship between these terms is not at all clear from that case. Presumably, a plaintiff may render a "substantial benefit" to his union membership by bringing suit, but if that "substantial benefit" is only "incidental" to the action (for example, by deterring future behavior), than any resulting compensation will not be for the "common benefit." I believe that to get out of this thicket of terms it is better to focus on what the *Shimman* court found to be dispositive – whether the plaintiffs or the union members received a benefit out of proportion to the litigation costs they incurred.

J.A. at 652-53.

The majority concedes that Plaintiffs, in vindicating their own free speech rights, "benefitted the Local as a whole." Majority at 19. This perception is fully supported by *Hall v. Cole*:

> When a union member is disciplined for the exercise of any of the rights protected by Title I, the rights of all members of the union are threatened. And, by vindicating his own right, the successful litigant dispels the "chill" cast upon the rights of others. Indeed, to the extent that such lawsuits contribute to the preservation of union democracy, they frequently prove beneficial not only in the immediate impact of the results achieved but in their implications for the future conduct of the union's affairs.

412 U.S. 1, 8 (1973) (internal quotation marks and citation omitted).

Nevertheless, the majority denies Plaintiffs attorney fees because "the local union is not benefitting from the efforts of the successful Plaintiffs in the same way as the Plaintiffs and so would not be unjustly enriched at the Plaintiffs' expense if they did not equally contribute to the litigation expense." Majority at 19. The majority's reasoning is somewhat elliptical, but appears to rest on the premise that whatever benefit the local may have received by Plaintiffs' vicarious protection of its free speech rights is not proportional to Plaintiffs' compensatory and punitive damage award, to which the local can claim no share. *See Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 744 F.2d 1226, 1234 (6th Cir. 1984) (en banc).

In *Shimman v. Int'l Union of Operating Eng'rs, Local 18*, we held that a plaintiff who received over $250,000 in compensatory and punitive damages in an LMRDA case may have "rendered a substantial benefit" to the union members by vindicating free speech rights, but did not render a "common benefit," because the union members could not partake of the

USWA is the collective bargaining representative for the unionized employees at Timet. The practice of USWA is to work out a tentative agreement with a company and then submit it to the local union for debate and ratification. The union members then vote on whether to ratify the proposed collective bargaining agreement ("CBA").

Plaintiffs Charles Argentine, Clarence Wingo, and John Gooch were members of Local 5644 who were elected as Local officers in 1994. As part of their campaign Plaintiffs promised not to give any more concessions to Timet in future agreements. When Plaintiffs were elected in 1994 negotiations were underway for a new CBA. The USWA district director overseeing Local 5644, Jim Bowen, was the lead negotiator for USWA and a staff representative, Andrew Powley, assisted him. Plaintiffs appointed themselves and seven other Local members to the negotiating committee of Local 5644 and also took part in the negotiations. They were paid for their time and expenses.

In late July 1994, Timet presented its final contract proposal to USWA. Plaintiffs openly opposed the proposal and the union voted 279-29 to reject it. On July 31, 1994, Local 5644 went on strike. Timet issued a WARN Act[1] notice stating the Company would close most of its operations at the plant and move them to another state unless Local 5644 made substantial contract concessions. Plaintiffs continued to oppose the concessions in the proposal. On October 15, 1994, Bowen and Timet agreed to end the strike and extend the current CBA until at least May 1, 1995.

At Plaintiffs' request, USWA and Timet restarted negotiations on the CBA in May 1995. Plaintiffs participated in those negotiations as members of a committee composed of local union members. Plaintiffs stated in the meeting

---

[1] The WARN Act provides: "An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order." 29 U.S.C. § 2102 (a).

between USWA and Timet that the current proposal under negotiation by the parties did not meet with their approval and they would not take it back to the local members for a vote. Shortly thereafter talks broke off between USWA and Timet.

At the same time the negotiations were taking place, a financial investigation of Local 5644 was being conducted by USWA auditors. In February 1995, Powley, the USWA staff member working at the Local, said he thought spending at the Local from the time Plaintiffs took office up to the present moment was out of control and he could not reign it in. He suggested USWA conduct an audit. Later that same month Bowen requested an audit of Local 5644. The audit of the Local was completed in May 1995 and revealed substantial expenditures by the Plaintiffs. Bowen and the auditor recommended USWA impose a trust on the Local and remove its officers from their positions. A trusteeship was imposed on June 9, 1995 and Plaintiffs were removed from office. They received a letter from USWA President Becker stating:

> To assure the performance of the collective bargaining agreements or other duties of a bargaining representative, you are hereby notified that Local Union 5644 is being placed under a [trusteeship] and all the officers are hereby relieved of their duties.

According to the letter, a hearing would be held later at which they could appear. The letter did not mention any financial irregularities.

Shortly after Plaintiffs were removed from office, USWA and Timet reached a tentative agreement. Bowen sent a letter to Local 5644 members urging ratification. Plaintiffs opposed the agreement. Contrary to usual practice, USWA conducted the ratification vote by mail. Local 5644 ratified the contract by a vote of 149 to 106.

On August 7, 1995, Plaintiffs were notified of a hearing before a USWA fact-finding Commission to be held on August 9, 1995. The notice did not mention financial matters

_____

**DISSENT**

_____

R. GUY COLE, JR., Circuit Judge. I concur with the majority on every issue except for its decision to reverse the district court's award of attorney fees to the Plaintiffs. With respect to that issue, I agree that no injunctive relief is necessary to entitle Plaintiffs to the "common benefit" exception to the American Rule. However, I do not agree with the majority's conclusion that the district court abused its discretion in awarding attorney fees. For that reason, I respectfully dissent.

This Circuit reviews an award of attorney fees for abuse of discretion. *Smoot v. United Transp. Union*, 246 F.3d 633, 647-48 (6th Cir. 2001). A district court abuses its discretion if it relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard. *Id.* (quoting *Owner-Operator Indep. Driver's Ass'n, Inc. v. Bissell*, 210 F.3d 595, 597 (6th Cir. 2000)). Under this standard, the appellate court reviews the district court's legal conclusions *de novo* and its factual findings for clear error. *Id.*

On the basis of his thorough review of the record and the law, Judge Marbley concluded

> that Plaintiffs rendered a substantial service to their union and fellow union members in vindicating their Title I rights by challenging their removal from office and the lawfulness of Defendant's imposition of trusteeship under Title III. In the absence of an attorney fees award, Plaintiffs would confer this benefit at an expense possibly amounting to nearly half of their total recovery. The burden that such an expense would impose on Plaintiffs stands out of proportion with the benefit received by the union membership as a whole.

should have granted them summary judgment on counts two and three. As a general rule the denial of summary judgment is not reviewable after a full trial on the merits. *Jarrett v. Epperly*, 896, F.2d 1013, 1016 n. 1 (6th Cir. 1990). Accordingly, we need not reach Plaintiffs' claim.

## CONCLUSION

For the reasons stated above, we **AFFIRM** the jury's verdict and damage award against USWA. We **REVERSE** the district court's award of attorney fees and remand the case to the district court, with directions to enter an order denying attorney fees. In light of the jury's verdict in favor of Plaintiffs after a full trial on the merits, we do not reach their claim that the district court erred in denying their motion for summary judgment.

and the Plaintiffs were unaware the hearing would involve financial matters. They requested a postponement of the hearing which was denied. The Commission issued a Commission Report which recommended continuing the trusteeship. USWA conducted two additional hearings. On November 29, 1995, an Appeals Panel held a hearing, adopted the Commission Report, and recommended the Executive Board adopt the Commission report. The Executive Board adopted the Commission report and on August 2, 1996, the Convention Appeals Committee held a hearing and adopted the decision of the Executive Board. The trusteeship was maintained until May 1997, the time for the next regularly scheduled election for officers.

Subsequent to these administrative proceedings, Plaintiffs filed suit in federal court against USWA for Plaintiffs' "unlawful" removal from their Local offices and imposition of a trusteeship on the Local. In the complaint Plaintiffs alleged, inter alia, three different claims. Count I stated USWA violated Plaintiffs' free speech rights contrary to the Labor Management Reporting and Disclosure Act ("LMRDA") § 101 (a) (2), 29 U.S.C. § 411 (a) (2). Count II alleged USWA imposed the trusteeship for an improper purpose contrary to LMRDA § 302 and § 304, 29 U.S.C. § 462 and § 464. Count III claimed USWA breached its contract with Plaintiffs by imposing the trusteeship in violation of its constitution and bylaws contrary to LMRDA § 301, 29 U.S.C. § 185. The matter went to trial and the jury found for Plaintiffs. The jury awarded each Plaintiff $1 in compensatory damages for count I; awarded Argentine and Gooch each $100,000 and Wingo $200,000 in punitive damages for count I; awarded each plaintiff $1 for compensatory damages on count II; and on count III awarded $3,800 to Argentine and Gooch and $1,800 to Wingo in compensatory damages.

After the trial USWA moved for judgment as a matter of law, a new trial, or a remittitur of punitive damages. The trial court denied USWA's motion. Plaintiffs moved for attorney

fees and to amend the judgment to include declaratory and injunctive relief. The district court granted the award of attorney fees but denied the other relief.

## DISCUSSION

### I. USWA's Claim for Judgment as a Matter of Law

At trial, USWA argued it imposed the trusteeship to correct Plaintiffs' financial mismanagement of Local 5644 which is a permissible purpose under the LMRDA. On appeal USWA now argues even if the court accepted Plaintiffs' theory of the case, that they imposed the trusteeship for the purpose of silencing the Plaintiffs, such a reason would be lawful under the LMRDA. Its argument, in this regard, "which take[s] the jury's findings at face value," presents a "purely legal" question that is subject to *de novo* appellate review. *K&T Enterprises v. Zurich Ins. Co.*, 97 F.3d 171, 175 (6th Cir. 1996).

Section 302 of the LMRDA states one of the purposes a trusteeship can be imposed is for "assuring the performance of collective bargaining agreements or other duties of the bargaining representatives." LMRDA § 302, 29 U.S.C. § 462. USWA argues one of the duties of a bargaining representative is to negotiate collective bargaining agreements, and Plaintiffs' statements that they would not take the current contract under negotiations between USWA and Timet back to the Local for a vote interfered with that duty. Thus, it was lawful for USWA to impose the trusteeship to remove that interference.

USWA is correct in its assertion that the imposition of a trusteeship to prevent local officials from disrupting collective bargaining is a legitimate purpose under the LMRDA. *Cascade Local Lodge No. 297 v. Int'l Ass'n of Machinist*, 684 F.2d 609, 610 (9th Cir. 1982); *Gordon v. Laborers' Int'l Union*, 490 F.2d 133, 137 (10th Cir. 1973). Even if the trusteeship was imposed for a proper purpose, however, this

We decline to follow either interpretation of the common benefit rule. The central issue for a court in determining the applicability of the common benefit theory is whether the members of the Local shared in the benefit of the suit in the same way as the plaintiff. For instance, in *Shimman* we did not allow an award of attorney fees because the benefit obtained by the union was only a small part of the benefits received by the plaintiffs. *Shimman*, 744 F.2d at 1235. To allow the plaintiffs to recover their attorney fees from the union would "not operate to spread the costs of litigation proportionately among these beneficiaries, the key requirement of the 'common benefit' theory." *Id*.

Where a Plaintiff recovers only a small amount of compensation and the suit provides a substantial benefit to local union members, attorney fees are appropriate. *See Murphy*, 774 F.2d at 127. In such cases the plaintiffs are sharing the benefits of the suit equally with the union and so the union should have to share the burden or cost of the suit with the plaintiff.

Applying the common benefit theory to this case requires we **REVERSE** the district court's decision to award attorney fees to Plaintiffs. Although Plaintiffs vindicated their free speech rights and thereby benefitted the Local as a whole, they also received compensatory and punitive damages that exceeded twice the stipulated value of the attorney fees. Plaintiffs received more than $400,000 in damages in this case in which members of the Local cannot share. Therefore, the local union is not benefitting from the efforts of the successful Plaintiffs in the same way as the Plaintiffs and so would not be unjustly enriched at the Plaintiffs' expense if they did not equally contribute to the litigation expense. *Hall*, 412 U.S. at 8, 93 S. Ct. at 1948.

### VII. Plaintiffs Summary Judgment Claim

Even though Plaintiffs prevailed at trial on all three counts of their complaint, they argue prior to trial the district court

"common benefit" theory that is not available to Plaintiffs because they only benefitted themselves and did not obtain injunctive relief that benefitted other members of Local 5644.

Under the "American Rule" courts do not ordinarily award attorney fees to the prevailing party. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S. Ct. 1612, 1616, 44 L. Ed. 2d 141 (1975). An exception to this rule occurs in LMRDA cases under a common benefit theory. *Hall v. Cole*, 412 U.S. 1, 93 S. Ct. 1943, 36 L.Ed.2d 702 (1973). The rationale behind the theory is if other members of the Local would benefit from the efforts of a successful plaintiff in the same way as the plaintiff, then those members would be unjustly enriched at the plaintiff's expense if they did not equally contribute to the litigation expense. *Id.* at 8, 93 S. Ct. at 1948.

Plaintiffs claim the common benefit theory should apply when a party vindicates the rights of all members of a Local. In *Hall,* the plaintiffs won their free speech claim and the rest of the Local's free speech rights were therefore protected. The court awarded attorney fees to the plaintiffs under the theory the rest of the Local should have to share in the cost of protecting their free speech rights. *Id.* Awarding attorney fees in free speech cases like this "simply shifts the costs of litigation to the class that has benefitted from them and that would have had to pay them had it brought the suit." *Id*.

USWA contends the common benefit theory only applies when some injunctive relief is awarded to the union because of a party's efforts. *Hall* was in fact such a case. They argue we have awarded attorney fees under a common benefit theory only when injunctive relief was given. *Shimman v. International Union of Operating Engrs., Local 18*, 744 F.2d 1226 (6th Cir. 1984) (plaintiffs did not receive injunctive relief and attorney fees were not allowed); *Black v. Ryder*, 970 F.2d 1461 (6th Cir. 1992); *Murphy v. IUOE*, Local 18, 774 F.2d 114, 127 (6th Cir. 1985) (attorney fees granted and plaintiff received injunctive relief).

alone would not entitle USWA to judgment as a matter of law on this issue.

A trusteeship is presumed to be valid when it is imposed for a purpose allowable under section 302 **and** it is imposed in a procedurally correct manner. LMRDA § 304, 29 U.S.C. § 464 (c). Parties challenging the lawfulness of a trusteeship therefore can show the trusteeship was being imposed for an unlawful purpose **or** they can challenge the trusteeship because it was not imposed according to proper procedures. *Teamster Local Union No. 406 v. Crane*, 848 F.2d 709, 712 (6th Cir. 1988). Thus, a trusteeship can be challenged by a plaintiff even if it was imposed for a proper purpose.

In this case Plaintiffs challenged the trusteeship on procedural grounds. In deciding cross-motions for summary judgment, the district court held as a matter of law the procedures for implementing and maintaining the trusteeship used by USWA did not comport with the procedural requirements of the LMRDA. *Argentine v. United Steel Workers Ass'n*, 23 F. Supp.2d 808, 814-18 (S. D. Ohio 1998). Because the trusteeship was defective on procedural grounds, it lost its presumption of validity. Once USWA lost its presumption of validity for the trusteeship, Plaintiffs could properly attack the reasons for the trusteeship at trial. Thus, even if silencing Plaintiffs was a lawful purpose, USWA would not be entitled to judgment as a matter of law.

## II.  Insufficiency of Evidence

USWA argues the evidence presented to the jury on Plaintiffs' free speech claims[2] was insufficient as a matter of law.  We review insufficiency claims *de novo*, without determining credibility or weighing evidence, and giving the prevailing party the benefit of all reasonable inferences. *K&T Enterprises, Inc.*, 97 F.3d at 175.

USWA contends Plaintiffs' factual theory of the case depended on Bowen's role in the decision to impose the trusteeship, yet they produced no evidence on this issue. Plaintiffs, however, did present evidence of Bowen's involvement in the decision to impose the trusteeship.  They presented evidence Bowen resented Plaintiffs' interference with the CBA negotiations.  They presented evidence Bowen agreed to a contract with Timet soon after Plaintiffs were removed from their positions.  They presented evidence Bowen requested an audit of Plaintiffs which, according to USWA, was the ultimate reason for their removal.  Finally, although Becker, USWA's president, ultimately approved the trusteeship, Bowen had just become his special assistant when he made the decision.

From this evidence a reasonable juror could infer USWA and its representatives were motivated to remove Plaintiffs because of their criticism of the negotiating process and Bowen played a role in that decision.  After the Court gives Plaintiffs the benefit of all reasonable inferences, this

---

[2]The LMRDA affords members of labor organizations certain free speech rights in connection with the buisness of the labor organization. "Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings." LMRDA § 101 (a) (2), 29 U.S.C. § 411 (a) (2).

Court stated that punitive damages must bear a "reasonable relationship" to compensatory damages. *BMW*, 517 U.S. at 580, 116 S. Ct. at 1601.  Although the *BMW* Court applied a 10 to 1 ratio, the Court did not establish a rigid mathematical formula.  Indeed the Court stated ratios may be higher where the harm is particularly egregious but the economic harm is minor or the monetary value of the injury is difficult to assess. *Id*. at 582, 116 S. Ct. at 1602.  In this case, Plaintiffs' reputations and free speech rights were impaired.  These injuries are without a ready monetary value as opposed to the injuries in *BMW*.  Thus, while the 42.5 to 1 ratio is larger than the 10 to 1 ratio approved by the Court in *BMW*, we cannot say it is unreasonable.

### C.  Similar Cases

USWA argues in other cases ratios of less than 42.5 to 1 have been subject to a remittitur and accordingly the punitive damages in this case should be as well.  *See Rubinstein v. Administrators of Tulane Educational Fund*, 218 F.3d 392, 408 (5th Cir. 2000) (punitive damages award that was 30 times greater than the compensatory award was unreasonable where harm Plaintiff suffered was loss of a 3.5 percent pay raise).  The cases USWA relies on, however, involved economic harm to a plaintiff which is much easier to quantify than the impairment of ones free speech rights.  In cases where the harm to the Plaintiff involved free speech rights the courts allow for higher ratios.  *See Kinslow v. American Postal Workers Union, Chicago Local,* 222 F.3d 269 (7th Cir. 2000) (LMRDA plaintiff awarded $150,000 dollars in punitive damages and $1 dollar in compensatory damages for his free speech claim).

After considering the three factors prescribed in *BMW*, we decline to exercise our power to order a remittitur in this case.

### VI.  Attorney Fees Award Should Be Reversed

USWA argues Plaintiffs' attorney fees award in this case must be reversed.  It contends the award is based on a

determining whether an award is excessive a court should consider 1) the degree of reprehensibility of the conduct, 2) the disparity between the harm or potential harm suffered by the plaintiff and his punitive damage award, and 3) the difference between the punitive damages and the civil penalties authorized or imposed in comparable cases. *Id*. at 575, 116 S. Ct. at 1598.

### A.   Reprehensible Conduct

In determining reprehensibility we consider a number of "aggravating factors" including whether the harm was more than "purely economic in nature" and whether a defendant's actions constitute "trickery or deceit" as opposed to mere negligence. *BMW*, 517 U.S. at 576, 116 S. Ct. at 1599.

Here the harm was more than purely economical in nature. The jury awarded punitive damages to Plaintiffs because it concluded USWA violated Plaintiffs' free speech rights.

From the jury's decision it is clear the jury determined USWA acted deliberately. USWA did not comply with its own constitution or bylaws when it imposed a trusteeship on Local 5644 and removed Plaintiffs from office. It did not inform Plaintiffs of the reasons for the imposition of the trusteeship until the day of the hearing which did not allow them an opportunity to defend themselves. It did not afford Plaintiffs due process during the maintenance of the trusteeship and throughout the appellate process. It removed Plaintiffs from their positions and then shortly thereafter reached an agreement with Timet. All of this evidence is more than adequate to support a conclusion USWA's behavior in this case amounted to much more than mere negligence but rather could be characterized as intentional, deliberate and akin to deceit.

### B.   Ratio Between Harm and Award

The ratio between compensatory and punitive damages in this case is 42.5 to 1. In *BMW* the United States Supreme

evidence is sufficient to show Bowen was, in part, responsible for the imposition of the trusteeship. *Id.*

### III.  Punitive Damages

USWA next claims the facts of this case do not warrant punitive damages. We allow punitive damages for LMRDA violations only upon a showing of a defendant's malice or reckless or wanton indifference to a plaintiff's rights. *Thompson v. Office & Prof'l Employees Int'l Union*, 74 F.3d 1492, 1508-09 (6th Cir. 1996). USWA argues this is not an egregious case deserving of punitive damages, even assuming Plaintiffs' theory of the case. It contends the imposition of the trusteeship was only to help the Local's members keep their jobs. USWA's motivation toward the Local, however, is irrelevant. The proper focus of the Court's inquiry is whether USWA's imposition of a trusteeship was a show of malice or wanton indifference to Plaintiffs' rights.

Plaintiffs submitted several pieces of evidence to the jury which would allow it to conclude USWA acted with wanton indifference to Plaintiffs' rights. First, USWA removed Plaintiffs from their elected positions soon after they stridently criticized USWA's contract negotiations. Second, USWA imposed the trusteeship without adequate notice and then held several hearings, all of which were not "full and fair" because they lacked due process. Third, the vote for ratification of the proposed CBA after Plaintiffs were ousted from office was held by mail-in balloting. This procedure was a deviation from the normal ratification process and did not allow Plaintiffs the same forum to express their disapproval of the CBA as in times past. The jury could have reasonably concluded from this evidence USWA acted with wanton disregard for Plaintiffs' rights.

### IV.  Motion for a New Trial

After the jury returned a verdict for Plaintiffs, USWA moved for a new trial and the district court denied its motion. USWA contends it is entitled to a new trial because (1) a jury

instruction "effectively" told the jury USWA had wrongfully imposed and maintained the trusteeship, and the district court did not allow USWA to present evidence on that issue; (2) the district court did not permit USWA to cross-examine a witness who was aligned with USWA, but made USWA call him in its case in chief; and (3) the district court excluded some of USWA's rebuttal testimony.

The Court reviews a district court's denial of a motion for a new trial under an abuse of discretion standard. *Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 574 (6th Cir. 1999). An abuse of discretion occurs when this Court has "a definite and firm conviction the trial court committed a clear error in judgment." *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989).

### A. Prejudicial Jury Instruction

USWA argues one of the district court's instructions to the jury "effectively instructed the jury" that USWA had improperly imposed the trusteeship. Further, the instruction asked the jury to consider evidence which was not relevant to the issues at trial. We review jury instructions as a whole to determine if they adequately inform the jury of the relevant considerations and "provide a basis in law for aiding the jury in reaching its decision." *Jones v. Consolidated Rail Corp.*, 800 F.2d 590, 592 (6th Cir. 1986). We will reverse a jury verdict only in situations where the instruction, viewed as a whole is "confusing misleading, and prejudicial." *Barnes v. Owens-Corning Fiberglass Corp.*, 201 F.3d 815, 822 (6th Cir. 2000).

The instruction to which USWA objects provided:

In deciding whether the USWA imposed the trusteeship in bad faith, you may consider, among other things, . . .

(2) whether the international union has shown, by clear and convincing evidence, that the continuation of the

Mr. Powley needed grievance people in place as quickly as possible. They are really the most essential interface with the company. He in fact made efforts to get older people who had been grievance committee men to do it. It's a thankless job . . and the only people he could convince were the younger people.

J.A. at 1782-83. USWA wanted this evidence admitted to show Powley reappointed these members because they were the only ones who would take the job and he was not simply indifferent to Local's finances. The district court excluded the statement as hearsay.

USWA argues even though Kirkpatrick's statement was hearsay, the statement should have been admissible under the "state of mind" exception to the hearsay rule[4] and its exclusion prejudiced them because they could not use it to rebut the impression Powley was not really concerned about the Local's finances. We find this statement to be equivocal on this point. Accordingly, we do not see that the exclusion of this statement prejudiced USWA even if it should have been admitted under the "state of mind" exception. We therefore conclude if there was any error it was harmless.

### V.  Remittitur

The jury awarded Plaintiffs $9,406 in compensatory damages and $400,000 in punitive damages. USWA claims this extreme disparity requires the Court to order a remittitur of the punitive damage award.

A court may order a remittitur if an award of punitive damages is grossly excessive. *BMW of N.A. v. Gore*, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996). In

---

[4]The state of mind exception to the hearsay rule provides: "A statement of the declarant's then existing state of mind . . (such as intent plan or motive)" is not excluded by the hearsay rule. Fed. R. Evid. 803(3).

## C. Exclusion of Rebuttal Evidence

USWA argues the district court improperly excluded statements of one of its witnesses as hearsay. Generally, we review a district court's evidentiary decisions for abuse of discretion, and will reverse only when we find that such abuse of discretion has caused more than harmless error. *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325 (6th Cir. 1994). Recently we have applied this standard to hearsay evidentiary rulings as well. *Trepel v. Roadway Exp. Inc.*, 194 F.3d 708, 716 (6th Cir. 1999). In order for USWA to prevail on this claim it must not only demonstrate the district court erred in excluding the hearsay statement, it must demonstrate the error prejudiced its case. *Id*.

The statement USWA desired to admit was made by Andrew Powley. Powley was the trustee of the Local after the Plaintiffs were removed from office. As part of his duties as trustee he appointed members of the Local to serve with him in the operation of the trusteeship. In July 1995, shortly after the Plaintiffs had been removed from their offices, Powley appointed three members of the Local who had engaged in the same financial spending practices as Plaintiffs to work with him. USWA argued at trial it had removed Plaintiffs from their offices because of financial mismanagement of Local funds. Plaintiffs argued at trial this reason was not genuine and as evidence of this pointed to the fact Powley reappointed these three members even though they had been removed for making the same type of expenditures as Plaintiffs when the trusteeship was imposed.

USWA tried to respond to this theory at trial by putting on evidence Powley had legitimate reasons for reappointing these three members and was not indifferent to the Local's finances. Powley died before trial and was unable to testify. However, Powely had talked to James Kirkpatrick, the appointed president of the Local during the trusteeship, about his reasons for reappointing the three members. The statement Kirkpatrick made was:

---

trusteeship for more than 18 months was necessary for an allowable purpose, and

(3) the failure of the international union to provide the procedural requirements mandated by that union's Constitution and bylaws.

The instruction does not misstate the law and is in accord with the statutory language of the LMRDA.[3] Further, the instruction is factually correct because the district court held as a matter of law the actions of USWA in imposing and continuing the trusteeship did not comport with the procedural requirements required by the union's constitution and bylaws.

Still, USWA argues the instruction "effectively" instructed the jury that USWA had wrongfully imposed and maintained the trusteeship. It contends the district court refused to admit evidence that would show a reason for the trusteeship's continuation. USWA argues in the face of its inability to present its evidence for continuation, the instruction had the effect of telling the jury the trusteeship was continued for unlawful reasons. This in turn had the effect of tarnishing the reputation of USWA and made it all the more believable

---

[3]For example, section 464 of the LMRDA provides:

In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitutions and bylaws and authorized or ratified after a fair hearing . . .shall be presumed valid for a period of eighteen months from the date of its establishment. . . after the expiration of the eighteen months the trusteeship shall be presumed invalid in any such proceeding and its discontinuance shall be decreed unless the labor organization shall show by clear and convincing proof that the continuation of the trusteeship is necessary for a purpose allowable under section 462 of this title.

29 U.S.C.§ 464(c).

USWA imposed the trusteeship for unlawful reasons in the first place.

USWA's evidence on continuation of the trusteeship that was excluded was (1) USWA's Commission Report that recommended continuation of the trusteeship and further audits, (2) a letter of January 17, 1996, that stated USWA's Executive Board Appeal Panel adopted the Commission Report, (3) the results of further audits, and (4) a transcript of the August 9, 1996, hearing before a USWA Convention Appeals Committee upholding the decision of the Executive Board Appeals Panel. The district court determined this evidence was not probative to the ultimate issue at trial-- whether the trusteeship had been lawfully imposed. It also determined this evidence might unduly influence the jury and usurp its fact-finding function.

USWA argues that while this evidence may not have been relevant to the central issue at trial, the district court made this evidence relevant by its jury instruction. As mentioned above, however, the district court also found such evidence to be prejudicial. Admitting or excluding relevant evidence that is prejudicial or confusing is within the district court's discretion. *Clarksville-Montgomery County School System v. United States Gypsum Co.,* 925 F.2d 993, 999 (6th Cir. 1991).

Further, exclusion of relevant evidence is harmless if other substantially equivalent evidence is admitted. *In re Air Crash Disaster*, 86 F.3d 498, 526 (6th Cir. 1996). All of the evidence excluded on the continuation issue showed USWA imposed and maintained the trusteeship because of the Plaintiffs' financial decisions. USWA provided substantially equivalent evidence this was its reason for imposing the trusteeship during the trial. Indeed when USWA tried to procure admission of this evidence a second time, the district court denied its request because, in part, the court felt the evidence was cumulative. The exclusion of this evidence did not prejudice USWA's case on the continuation issue. Thus, the instruction did not "effectively" instruct the jury USWA

had unlawfully imposed the trusteeship and was not prejudicial.

**B.  USWA's Right to Cross-Examine King**

USWA claims the district court improperly denied it the right of cross-examination of one of its witnesses. Ron King, an auditor for USWA, was called by the Plaintiffs in their case in chief. The district judge did not allow USWA to cross-examine King after Plaintiffs' direct examination because the court concluded he was essentially a USWA witness. Instead the court required USWA to call King in its case in chief a week later. USWA argues it has a right to cross-examine witnesses directly after direct examination and the delay in this case created jury confusion.

Cross-examination is a trial right. *Alford v. United States*, 282 U.S. 687, 691, 51 S. Ct. 218, 219, 75 L. Ed. 624 (1931). A court must permit a party to substantially and fairly exercise its right to cross-examination. *Francis v. Clark Equip. Co.*, 993 F.2d 545, 551 (6th Cir. 1993). However, "[sometimes] cross-examination is cross-examination in form only and not in fact, as for example the 'cross-examination' of a party by his own counsel after being called by the opponent." Fed. R. Evid. 611, Advisory Committee Notes. The district court determined King was a party where cross examination would only be in form and not in fact. Accordingly, the district court decided to require USWA to examine King in its case in chief as opposed to during the Plaintiffs' case.

The Federal Rules of Evidence give discretion to the trial judge as to the order witnesses are called. Fed. R. Evid. 611 (a). Further, a trial court's control over the order of the evidence will not be disturbed absent an abuse of discretion. *Geders v. United States*, 425 U.S. 80, 86, 96 S. Ct. 1330, 1334, 47 L.Ed.2d 592 (1976). We cannot conclude it was an abuse of discretion for the district court to require King's examination in USWA's case in chief.