*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 04a0353p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

TINA K. FIELD; NORMAN THOMAS FIELD, JR.,
        *Plaintiffs-Appellants/Cross-Appellees,*

    *v.*

TRIGG COUNTY HOSPITAL, INC.,

        *Defendant,*

WILLIAM B. ANDERSON, M.D.,
        *Defendant-Appellee/Cross-Appellant.*

Nos. 02-6440/6517

———————

Appeal from the United States District Court
for the Western District of Kentucky at Paducah.
No. 99-00207—Edward H. Johnstone, District Judge.

Argued: August 10, 2004

Decided and Filed: October 15, 2004

Before: SILER, MOORE, and COLE, Circuit Judges.

———————

## COUNSEL

**ARGUED:** Dan L. Nolan, Jr., BATSON, NOLAN, BRICE, HARVEY & WILLIAMSON, Clarksville, Tennessee, for Appellants. E. Frederick Straub, Jr., WHITLOW, ROBERTS, HOUSTON & STRAUB, Paducah, Kentucky, for Appellee. **ON BRIEF:** Dan L. Nolan, Jr., Suzanne G. Pearson, BATSON, NOLAN, BRICE, HARVEY & WILLIAMSON, Clarksville, Tennessee, W. Douglas Myers, William J. Sweeten, DEATHERAGE, MYERS, SELF & LACKEY, Hopkinsville, Kentucky, for Appellants. E. Frederick Straub, Jr., Joe H. Kimmel, III, WHITLOW, ROBERTS, HOUSTON & STRAUB, Paducah, Kentucky, for Appellee.

    COLE, J., delivered the opinion of the court, in which MOORE, J., joined. SILER, J. (p. 8), delivered a separate dissenting opinion.

———————

## OPINION

———————

    R. GUY COLE, JR., Circuit Judge. Plaintiffs-Appellants, Tina and Norman Field, appeal the district court's denial of their motion for a new trial after a jury returned a verdict in favor of Defendant-Appellee, Dr. William B. Anderson, following a trial for medical malpractice in federal court based on diversity

1

jurisdiction. Plaintiffs contend that they are entitled to a new trial because the district court improperly admitted prejudicial hearsay evidence when it permitted Dr. Anderson to testify about the statements made by two unnamed, undisclosed physicians with whom he allegedly consulted concerning Tina Field's medical care.

Because the statements of the two unknown physicians were classic hearsay and do not fall into any of the hearsay exceptions contained in the Federal Rules of Evidence, and because the statements' admission was highly prejudicial and more than mere harmless error, we **VACATE** the jury's verdict and **REMAND** the case to the district court for a new trial.

## I. BACKGROUND

### A. *Factual Background*

At approximately 9:20 p.m. on September 1, 1998, Tina Field sought treatment at the Trigg County Hospital emergency room, in Cadiz, Kentucky, immediately after being bitten twice in her right foot by a copperhead snake. Defendant-Appellee, William B. Anderson, was the physician on call when Field arrived at the hospital. Dr. Anderson is a family practitioner with a solo practice, but he also works shifts at the Trigg County Hospital emergency room. Upon learning that a snake bite victim was coming to the emergency room, Dr. Anderson reviewed the emergency room textbook concerning the treatment of snake bites and called a hospital in Murray, Kentucky, to have antivenin delivered to Trigg County Hospital. The antivenin arrived shortly after Tina Field checked into the emergency room. Dr. Anderson had experience with only one venomous snake bite prior to treating Tina Field's injury, and he had no experience administering antivenin.

When she arrived at the emergency room, Tina Field reported that she felt sick to her stomach, faint, dizzy, and numb, and Dr. Anderson noted significant swelling in her right foot and that the foot was warm. Dr. Anderson determined that Field had a "wet" copperhead snake bite, which meant that there had been envenomation. His plan was to monitor her, administer intravenous fluids and a tetanus shot, and look for any progression of the bite's severity. Dr. Anderson checked on Field periodically during the night, but did not give her any antivenin. When Dr. Anderson next saw her, at 9:00 a.m. on September 2, Field had swelling above her right knee, and her right foot was becoming cold and had a bluish color to it.

At 5:00 p.m. on September 2, Field complained of pain in her right big toe and coldness in her right foot. At this point, Nurse Stephen P'Poole checked Field's right foot for a pulse, but did not feel one. As a result, P'Poole called Dr. Anderson. At no time after 5:00 p.m. did Tina Field have a pulse in her right foot.

Three hours later, at 8:10 p.m., Dr. Anderson made his first call for assistance. He phoned an attending emergency room physician at the Vanderbilt University Medical Center, who then referred him to a Vanderbilt toxicologist. The Vanderbilt physicians were never deposed and they never testified at trial. Indeed, their identities, names, and credentials remain completely unknown. Nevertheless, Dr. Anderson was permitted to testify at trial that he telephoned these individuals and gave them a patient history and condition assessment of Tina Field; however, there was no evidence that Dr. Anderson told the Vanderbilt physicians that Tina Field lacked a pulse in her right foot. Moreover, Dr. Anderson was permitted to testify – over Plaintiffs' objections – as to what the Vanderbilt physicians said over the telephone. According to Dr. Anderson, the Vanderbilt emergency room physician and toxicologist told him that he was "doing everything appropriately," that "they would be doing the same thing;" and that the main treatment is to elevate and monitor the leg. Dr. Anderson's testimony concerning the Vanderbilt physicians' alleged statements is the crux of this appeal and will be discussed in more detail below.

Tina Field remained in the Trigg County Hospital, under the care of Dr. Anderson, through September 6. On that date, despite Field's foot remaining cool and without a pulse, Dr. Anderson believed

the snake bite was improving, discharged Field from the hospital, and instructed her to keep her right leg elevated and to return for an appointment two days later. At the September 8 checkup, Field's foot was still cool and there was still no pulse in her right foot.

The Fields were growing more concerned about Ms. Field's condition and so, on September 9, they sought treatment at the Blanchfield Army Hospital emergency room in Fort Campbell, Kentucky. (Ms. Field was entitled to medical care at the military hospital pursuant to benefits received by her husband, who is retired from the United States Army). Tina Field stayed at Blanchfield until September 15, when she was transported by a medical helicopter to Wright-Patterson Air Force Base in Dayton, Ohio. Upon her arrival at Wright-Patterson, Field's treating physician, Dr. Christopher Spieles, knew that Ms. Field was in need of some sort of amputation. In an effort to lessen the amount of amputation, Field underwent hyperbaric dives – which are designed to deliver large amounts of oxygen to body tissue – in an attempt to revive the tissue in her right foot. Unfortunately, these treatments did not improve her condition. As a result, Field's right foot was surgically amputated on October 1, 1998. During the surgery, Dr. Spieles observed that the condition of Field's leg tissue was such that a second surgery would be necessary. Accordingly, on October 6, 1998, Field underwent a below-the-knee leg amputation. She subsequently required two additional surgeries to modify the stump in order to accommodate a prosthetic device.

## B. *Procedural History*

The Fields filed this diversity action against Trigg County Hospital and Dr. Anderson on February 5, 1998, alleging malpractice and negligence. The hospital settled with the Fields prior to trial and was dismissed as a defendant. A jury trial concerning the claims against Dr. Anderson commenced on March 4, 2002, and lasted four days. At issue was whether Dr. Anderson breached the standard of care for treating a copperhead snake bite. Plaintiffs alleged that Anderson was inexperienced in treating venomous snake bites and that Tina Field should have been transferred to physicians and facilities more capable of treating her serious injury.

Each side presented three expert medical witnesses concerning the standard of care administered by Dr. Anderson. In addition, as explained above, Dr. Anderson testified that on September 2, 1998, he telephoned the Vanderbilt University Medical Center to seek advice concerning how to treat Tina Field's snake bite. At this point in the trial, Anderson's attorney halted Anderson's direct examination to consult with the trial judge about the proper scope of the testimony he could elicit from Anderson – that is, whether Anderson could relay to the jury what the Vanderbilt physicians told him on the telephone.

At a hearing outside the presence of the jury, the trial judge stated that he would permit Anderson to testify as to the Vanderbilt physicians' statements. It is difficult to discern the rationale used by the district court to admit the testimony; and, at times – as is evident from the hearing transcript excerpted below – the rationale appears somewhat contradictory. The judge seems to have ruled that the testimony was admissible under the hearsay exception in Fed. R. Evid. 803(4), which permits statements made for purposes of medical diagnosis or treatment to be admitted for the truth of the matter asserted. (In its order denying Plaintiffs' motion for a new trial, the district court again appears to have relied on Fed. R. Evid. 803(4) to justify the statements' admission). Subsequently, however – and this is what leads us to find the district court's rationale somewhat confusing – the court instructed the jury that the statements were not to be considered for their truth (that is, that Dr. Anderson was administering proper care). The Fields's attorney objected on the grounds that the testimony was classic hearsay, that it did not fall under the Fed. R. Evid. 803(4) exception, and that Vanderbilt physicians' statements constituted expert opinions, which, if admitted, would go wholly unchallenged because the physicians could not be cross-examined.

Following is the colloquy among the parties and the judge – outside the presence of the jury – during which time the court announced its somewhat confusing ruling that it would allow Anderson to testify as to the Vanderbilt physicians' statements:

THE COURT:  Well, there's a lot, I mean that fits into the, into the . . . 803(4) rule, but I think [Anderson] can state what he heard.  It's not for the proof of what he heard, but statements of what he heard and relied upon.  It's been an issue in this case right along, so I'm going to let it come in.

PLAINTIFFS:  Well, I think the jury ought to be given an admonition what Vanderbilt has told him is not to be considered for a purposes of determining whether that's appropriate care or not.

THE COURT:  You can all work it out.  Let me pass on that one when it's coming in.

PLAINTIFFS:  I think [Defendant's counsel is] getting ready to right now.

DEFENDANT:  I'm getting ready to ask right now.

THE COURT:  I'm going to let [Anderson] say it.  That the information received, is it not?

DEFENDANT:  That's correct.

THE COURT:  Whether it's good medical care or not.

DEFENDANT: That's right.

THE COURT:  Go ahead.

Back before the jury, Dr. Anderson then testified as to what he told the Vanderbilt emergency room physician and toxicologist and what they, in response, told him.  The relevant testimony was as follows:

DEFENDANT'S COUNSEL:  Dr. Anderson, when you talked to the physicians at Vanderbilt, did they tell you anything or did you get any information from them?

ANDERSON:  Yeah, both the ER doctor and the toxicologist that I talked to said essentially the same thing . . . .  As far as the leg goes, they said that they never administer antivenin to copperhead snake bites and certainly would not, you know, this, you know, far, you know, into the course.  They felt like, you know, that we were doing everything appropriately, you know, keeping the leg, you know, elevated, you know, that you would normally expect for the swelling to progress over 24 to 48 hours and then she would start to, you know, show some improvement, you know from there.  So that, you know, the ER doctor said that and he said he would get a toxicologist to talk to me, too, to, you know, to get, you know, this person's opinion.  So, you know, I went back and talked to Mr. Field and told him the information that we had so far and that I was waiting on the call from the toxicologist.  And then in a little while the toxicologist called back and again I presented the, you know, the whole history to her and, you know, she said eventually, you know, the same thing . . . [that] the leg was doing what would be expected with a copperhead snake bite, that she does not administer antivenin, you know, to copperhead snake bites and, and that the main treatment is keeping it elevation, you know, keeping it elevated, monitoring and giving supportive treatment and that they would be doing the same thing.  She did say that she would be willing to take, you know, if the patient and the family wanted to come up there, but she felt like they would not do anything different.

## II. DISCUSSION

At issue is: (1) whether the district court erred by permitting Dr. Anderson to testify about what he was told by the Vanderbilt physicians, and (2) if so, whether that error was so prejudicial as to require us to vacate the jury's verdict and remand the case for a new trial.

We review a district court's denial of a motion for a new trial under an abuse of discretion standard, *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 891 (6th Cir. 2004), although we review *de novo* a district court's conclusions of law, such as in this case, whether evidence offered at trial constituted hearsay within the meaning of the Federal Rules of Evidence. *Hancock v. Dodson*, 958 F.2d 1367, 1371 (6th Cir. 1992) (citation omitted).

Defendant contends that the statements of the Vanderbilt physicians – admitted through Dr. Anderson's testimony – were not hearsay because they were not used to prove the truth of the matter asserted (the matter asserted being that Dr. Anderson was "doing everything appropriately" and that "they would not do anything different."). Defendant contends that the statements were elicited to prove simply that Dr. Anderson provided proper care by "consulting with other physicians who were better versed in the field of toxicology." (Appellee's Brief, at 16). As a preliminary matter, that argument fails because the qualifications – indeed, the very identities – of the Vanderbilt physicians are not even known. But more importantly, the argument is simply not credible. The fact that a conversation took place between Dr. Anderson and the Vanderbilt physicians is not hearsay, and the simple fact that a consultation took place could have been elicited easily by Defendant's counsel without revealing the substance of the Vanderbilt physicians' responses. (Indeed, that is precisely what happened prior to Defendant's counsel pausing during his direct examination of Dr. Anderson to consult with the district judge whether or not he could proceed to question Dr. Anderson about the substance of the statements). Therefore, the only possible purpose for taking the additional step of telling the jury what was allegedly said by the Vanderbilt physicians was to expose the jury to the substance of those statements and persuade the jury of their truth – namely, that Dr. Anderson was "doing everything appropriately." The statements were hearsay because they went well beyond conveying that Dr. Anderson sought out a consultation to the entirely self-serving purpose of exposing the jury to the approving words of two purported experts from a purportedly esteemed medical institution.

Defendant next contends that even if the testimony was offered for the truth of the matter asserted, it was admissible pursuant to the hearsay exception contained in Fed. R. Evid. 803(4), which permits the admission of statements made for purposes of medical diagnoses or treatment. The rule states in relevant part:

> The following are not excluded by the hearsay rule . . . . Statements made for purposes of medical diagnosis or treatment describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

The rationale behind this exception is that statements made by an individual to physicians for purposes of diagnosis or treatment are considered exceptionally trustworthy because the declarant has a strong motive to tell the truth in order to receive proper care. *White v. Illinois*, 502 U.S. 346, 355-56 (1992). As such, courts have interpreted the exception to be limited to statements made by the one actually seeking medical treatment or care. *See Stull v. Fuqua Inds., Inc.*, 906 F.2d 1271, 1273-74 (8th Cir. 1990) ("[T]o fall within the exception [of Fed. R. Evid. 803(4)], the statement must be obtained from the person seeking treatment, or in some instances from someone with a special relationship to the person seeking treatment, such as a parent."); *Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1316 (9th Cir. 1985) ("Rule 803(4) applies only to statements made by the patient to the doctor, not the reverse."); *see also Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 564 (7th Cir. 1996) (holding that statements made by a doctor to a patient are not admissible under Fed. R. Evid. 803(4) because the rule does not except statements by the person

providing medical care). We agree that the hearsay exception set forth in Fed. R. Evid. 803(4) applies only to statements made by the one actually seeking or receiving medical treatment. Accordingly, the Vanderbilt physicians' statements – as statements made by consulting physicians to the treating physician – are not admissible pursuant to the Fed. R. Evid. 803(4) hearsay exception.

Having determined that the statements were hearsay and that they do not fall under the hearsay exception set forth in Fed. R. Evid. 803(4), we now turn to the question of the statements' impact. We will vacate a jury's verdict based on a district court's erroneous admission of hearsay evidence only if the testimony's admission amounted to more than harmless error. *Argentine v. United Steelworkers of America*, 287 F.3d 476, 486 (6th Cir. 2002).

The critical question for the jury in this case was whether Dr. Anderson administered the standard of care to Tina Field that a reasonable physician under similar circumstances would have administered. Each side presented three medical expert witnesses concerning Dr. Anderson's standard of care. Having reviewed the record, it is clear that the district court's admission of the Vanderbilt physicians' statements was highly prejudicial because it enabled Dr. Anderson to introduce two additional expert opinions vouching for his standard of care. Yet unlike the other expert witnesses, the Vanderbilt physicians' identities and credentials were entirely unknown and their opinions were never subject to cross-examination.

Of greatest concern to this Court is that the Vanderbilt physicians' statements were the strongest evidence at trial that Dr. Anderson might have provided Tina Field with proper care because they were made *while* that care was being administered. That is, unlike the other medical experts who testified at trial by opining retrospectively on a cold record, Dr. Anderson's testimony about the Vanderbilt physicians' statements permitted him to convey the highly prejudicial impression that Tina Field was essentially being treated by a team of three doctors, two of whom were held out to the jury to be experts from the Vanderbilt University Medical Center.

We have noted that "[i]n close cases the improper admission of prejudicial evidence is all the more damaging." *Mitroff v. Xomox Corp.* 797 F.2d 271, 277 (6th Cir. 1986). Here, there is little doubt that the substance of the statements, combined with the air of prestige and expertise attributed to their anonymous sources, rendered them highly prejudicial to Plaintiffs' case.

Finally, we do not find, as Defendant urges us to, that the district court's jury instruction concerning the statements was curative. The court's instruction was as follows:

> THE COURT: You just heard about a telephone conversation with Vanderbilt. It's permissible for you to hear that, to hear the doctor's testimony as to the statements that he heard over the telephone. That's proper for you to consider that. That's not proper to consider whether – the information received is not proof of the validity of the advice given, but it is proper for you to consider the testimony that there was a conversation with these people at Vanderbilt. That's a matter for you to consider. Thank you.

Given the instruction's patently jumbled and confusing nature, we are certain that no juror would have properly understood it to prohibit his or her consideration of the substance of the Vanderbilt physicians' statements.

The dissent dismisses the possibility of prejudicial error by presuming that Plaintiffs "must have been satisfied with the district court's wording of the admonition," since Plaintiffs "fail[ed] . . . to suggest a clearer admonition or later instruction to the jury." First of all, as a legal matter, Plaintiffs were not required to object to the admonition in order to preserve their claim of error concerning the Vanderbilt physicians' statements. According to Rule 103(a)(2) of the Federal Rules of Evidence, "[o]nce the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection . . . to preserve a claim of error for appeal." Plaintiffs properly preserved their claim of

error when – during the side-bar discussed above – they objected to the statements' admission on hearsay grounds.  Secondly, as a factual matter, Plaintiffs' counsel did attempt to discuss the admonition with the judge, at the side-bar.  Plaintiffs' counsel, Mr. Myers, stated: " I think the jury ought to be given an admonition [that] what Vanderbilt has told him [i.e. Dr. Anderson] is not to be considered for . . . purposes of determining whether that's appropriate care or not."  It was the trial judge who then prevented any further discussion about the admonition by responding:  "Let me pass on that one when it's coming in."  Realizing that the Vanderbilt statements would be presented imminently, Mr. Myers quickly rejoined: "I think [Defendant's counsel is] getting ready to [elicit the statements] right now."  The judge was unresponsive to this apparent second attempt to discuss the admonition and directed the examination of Dr. Anderson to continue.  Nevertheless, Mr. Myers's efforts were hardly those of a passive or acquiescent counsel, as the dissent suggests.

For those reasons, we hold that the erroneous admission of the statements was not harmless error.

### III. CONCLUSION

For the foregoing reasons, we VACATE the jury's verdict and REMAND this case to the district court for a new trial.  Defendant's cross-appeal challenging the district court's denial of attorneys' fees and costs is, therefore, moot, and DISMISSED.

---

**DISSENT**

---

SILER, Circuit Judge, dissenting.  I agree with the majority's conclusion that the admission of the statements from the two persons at the Vanderbilt Hospital to Dr. Anderson were hearsay.  However, I would affirm the decision by the district court, because the error was harmless.

The majority recognizes that Dr. Anderson's testimony that he sought the advice of an emergency room doctor and toxicologist at the Vanderbilt Medical Center was properly admitted.  It was the substance of the conversation between Dr. Anderson and the Vanderbilt physicians that was improperly admitted over an objection.  However, the district court's admonition to the jury immediately following the admission of that testimony focused on that point.  The majority criticizes the court's admonition to the jury, but the admonition was given with the approval of Field's lawyer and no objection or substitute version of the admonition was presented to the court to correct any ambiguity in the language.  Moreover, Field's counsel did not tender any instruction to the jury under Fed. R. Civ. P. 51.

Although the admonition to the jury could have  been couched in clearer language, the failure of counsel to suggest a clearer admonition or later instruction to the jury suggests that the error was harmless.  "An erroneous admission of evidence that does not affect the 'substantial rights' of a party is considered harmless."  *United States v. Cope*, 312 F.3d 757, 775 (6th Cir. 2002).  This admission of hearsay was the only assignment of error from the entire proceeding before the district court.  It was made in the context of multiple expert witnesses from both sides who presented evidence of the standard of care.  Testimony as to the fact of Dr. Anderson's consultation with, and his resulting reliance upon, Vanderbilt's medical experts would have been admissible, and the prejudicial effect of the hearsay evidence was tempered by the admonition to the jury.  This admonition was for the benefit of the plaintiffs.  "If the [party], having lost their argument on general admissibility, desired a more precise limiting instruction on the extent to which the jury could consider such testimony, it could, and should, have requested one."  *United States v. Dozier*, 672 F.2d 531, 543 (5th Cir. 1982).  As the plaintiffs were aware that it was the intent of the court to cure the improper prejudicial effect of the hearsay evidence, they must have been satisfied with the district court's wording of the admonition.  Parties cannot elect to remain silent in apparent reliance on a jury instruction until after an adverse jury verdict and then raise this issue for the first time on appeal.  *See Segal v. Cook*, 329 F.2d 278, 280 (6th Cir. 1964).

A basic principle of the law is that juries are presumed to follow the instructions of the court.  *See Richardson v. Marsh*, 481 U.S. 200, 206-07 (1987); *United States v. Forrest*, 17 F.3d 916, 920-21 (6th Cir. 1994).  Here, the district court instructed the jury not to consider the statement from the Vanderbilt personnel as proof of the standard of care, but just that they gave Dr. Anderson some advice.  Because counsel for the plaintiffs did not object to the admonition nor tender an alternative either at the time the admonition was made or at the time the instructions to the jury were given, the plaintiffs have to be considered satisfied with that admonition.  I would presume that the jury followed the admonition of the court.  Therefore, I would find that the one error at trial in admitting the statements from the persons at Vanderbilt was harmless because it was cured by the admonition.